15189

BOHUMIR KRYL SYMPHONY BAND, INC., v. ALLEN UNIVERSITY

(12 S. E. (2d), 712)

*Messrs. Cole L. Blease* and *Blease Ellison,* for appellant,

*Mr. Harold C. Seigler,* for respondent,

December 31, 1940.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

This is an action for the breach of a contract, alleged in the complaint of respondent to have been entered into with it by appellant, Allen University, in the language following: "3. That heretofore on the 19th day of May, 1938, at Columbia, S. C., for and in consideration of the sum of Seven Hundred and Fifty ($750.00) Dollars, which the defendant agreed to pay to the plaintiff, the said parties entered into a written contract, wherein and whereby the plaintiff was engaged by the defendant to give two concerts on Saturday, November 5, 1938, which performances were to be given by the plaintiff under the terms and conditions as set forth in the original contract, all of which will more fully appear by reference thereto."

The appellant in its answer qualifiedly admitted the above paragraph of the complaint, said admission reading: "3. Admits Paragraph three of said complaint, in that the president of said defendant institution entered into a contract with the plaintiff, on May 19, 1938, but that entering into said contract the said president exceeded his authority, and that the said acts are 'ultra vires'; * * *."

Paragraph 8 of the answer denied each and every allegation of the complaint not specifically admitted and demanded strict proof thereof.

Issue being thus joined, the case came on for trial, and in the course thereof, respondent (plaintiff) offered in evidence, without objection on the part of appellant (defendant), a contract of the purport of the one described in the complaint between respondent and one Eugene H. McGill; testimony that at the time of the execution of the contract, McGill was the president of Allen University; and letters to respondent from McGill on stationery of ap-

pellant, signed by him as president, in which he undertook to cancel the contract which he had signed.

At the conclusion of respondent's testimony, appellant made a motion for a nonsuit on the ground "that there are no statements as to Allen University being a party to the contract. It was signed by Eugene H. McGill individually and in no way has the University had any part or anything whatsoever to do with the contract. We contend that the action should have been brought against McGill individually and not against Allen University." The ruling of the trial Judge was: "I think these will be enough to take the case to the jury. I think there is enough in the correspondence to take it on."

There is no appeal from the refusal of the trial Judge to grant the motion for nonsuit. Appellant's Exception 3 alleges error in not directing a verdict in its (defendant's) favor, but the record does not disclose that such a motion was made, and therefore will not be considered.

The appellant (defendant) then proceeded with its testimony, all of which was finally stricken out except the charter of appellant, and the testimony reported immediately hereafter.

"Q. Will you take this charter and tell us what are the duties of the president from the charter? A. In Section 4 of this charter we have this: 'That the said Board of Trustees of said Allen University shall have power to elect a faculty, comprising professors, tutors and instructors, and assign their duties, and also power to remove in their discretion; to prescribe a course of study or curriculum to confer degrees and diplomas, and such other honorary distinctions of similar grade.' And Section 5, 'That the faculty proper (composed of professors holding chairs) shall also have auxiliary powers, by and with the consent of the Board of Trustees, to prescribe a course of study, frame rules and regulations for discipline, and enforce all needful require-

ments for the educational interest of the said Allen University.'

"Q. Do you find any set rules in that charter as to the power of the president? A. No, sir; but the rule here is the rule of the faculty and the president is a member of the faculty. He is a member of the faculty like anybody else only he is chairman of the faculty.

"Q. The faculty of which the president was a part are ruled by the board of trustees? A. Yes, sir.

"Q. What has become of Dr. McGill, former president of the University? A. Dr. McGill is deceased.

"Q. Can you tell us what time he died, do you recall? A. It seems to me it must have been either in February or March of 1932."

In reply respondent (plaintiff), without objection by appellant, offered testimony that other concert bands, orchestras and singers had given performances at Allen University prior to the date of the contract involved in the instant case.

At the conclusion of all of the testimony, respondent moved for a directed verdict, the apposite grounds being: "That the defendant (appellant) admits the execution of the contract and admits by his (its) pleadings the breach of it and sets up the defense only that the acts of the president were ultra vires * * *;" "* * * that the only reasonable inference that can be drawn from the testimony is that the acts of the president in the execution of this contract were under the authority that he had; *that there was no evidence of the authority or lack of authority of the president to execute this contract and that by the pleadings and the lack of testimony* we are entitled to a directed verdict for the amount of damages which we have proven." (Italics added.)

As usual, there was discussion of the motion by the counsel representing respondent and appellant, respectively, and in this instance by the trial Judge, and who in refusing

the motion, stated: "Gentlemen, I am going to do this. I have to rule on these matters. I am going to submit this question to the jury as to whether or not the defendant has proven by the greater weight or preponderance of the evidence that the president was acting ultra vires, and if they find that he had authority to act under all of the circumstances that their verdict would be for the plaintiff for the full amount asked."

The case was submitted to the jury on the sole issue if the act of McGill in signing the contract was "ultra vires, that is, beyond his power, that he had no authority to act in this particular instance." And in his charge to the jury, the trial Judge emphasized that the burden was on the appellant (defendant) to prove to their satisfaction by the greater weight or preponderance of the evidence "that McGill at the time was acting beyond the scope of his authority, that he had no right to enter into this contract here."

The jury returned a verdict for the appellant (defendant). Respondent then and there in open Court moved for judgment against the defendant (appellant) notwithstanding the verdict. This motion, by consent, was marked "heard" and thereafter the trial Judge signed the order appealed from, and in which he granted respondent's (plaintiff's) motion for judgment against appellant (defendant) *non obstante veredicto*.

This action was commenced and tried upon the theory that the contract in question was a contract which Eugene H. McGill, executed for and on behalf of appellant, although signed only in his individual capacity; and was contested on the ground that McGill did not have the power and authority to bind the appellant institution for the fulfillment thereof, such being the issue raised by the answer of appellant.

The trial Judge has treated with the issue as though the appellant corporation, through one of its officers, to-wit, its president, having the power so to do, had entered into a contract with respondent, and that appellant corporation

had not the legal right or authority to enter into such a contract; whereas the issue was whether Eugene H. McGill, the president of the appellant had the authority and power to enter into a contract in his individual name or as president of appellant institution, for a musical concert to be rendered at appellant institution, and thus bind the appellant to pay therefor; and in submitting the issue to the jury placed the burden of proof upon the appellant to show by the preponderance of the evidence that McGill did not have this right. Again in granting respondent's motion for judgment against appellant, *non obstante veredicto,* the trial Judge has bottomed his order very largely upon the fact that the appellant had failed to meet the burden of proof as to the lack of power and authority in the said Eugene H. McGill to bind appellant.

In the circumstances of this case, where the appellant has not accepted any benefits under the contract, where Eugene H. McGill *as president* of appellant repudiated and undertook to cancel the contract on August 22, 1938, before the time for its fulfilment by respondent on November 5, 1938, and where the contract for the breach of which respondent seeks damages was signed solely by McGill as an individual and not as and for the appellant institution, the burden of proof was on the respondent to show not only that he was acting for appellant, but that he had the authority and power in this manner to bind the appellant institution.

Conceding, without so deciding, that the trial Judge had the power to grant respondent's motion for judgment notwithstanding the verdict of the jury, he could do so only for the reason he should have directed a verdict for respondent during the trial of the case, and upon the grounds of the motion duly made therefor. Reference to the grounds of respondent's motion hereinbefore set out will show that the motion was predicated upon the fact *"that there was no evidence of the authority or lack of authority of the president to execute this contract and that*

*by the pleadings and the lack of testimony* we are entitled to a directed verdict for the amount of damages which we have proven."

In the order of the trial Judge granting respondent's motion for judgment against the appellant, *non obstante veredicto,* the grounds therefor as set out in the order have been considerably enlarged upon to those upon which its motion for directed verdict was made during the trial of the cause, but as aforesaid, respondent was limited in its grounds to those upon which a directed verdict was asked. It should also be stated that respondent served sustaining grounds to the order appealed from alleging that the trial Judge erred in overruling its motions for a directed verdict, the error being (1) that there was no competent evidence to show that the acts of the president in executing the contract in question was without authority or that such acts of the president were ultra vires; and (2) that the only reasonable inference that could be drawn from the testimony was that the president of the defendant institution possessed the authority to execute the contract in question.

The charter of appellant, and the admitted testimony thereabout, did not give McGill as president of the appellant institution authority to execute a contract binding upon appellant for a concert performance. The contract relied upon was not made in the name of the appellant, nor executed by McGill as president of appellant institution, but in his individual name. There is admittedly no testimony on behalf of respondent that McGill had the power and authority to in such manner or as president of appellant institution execute a contract which would be binding upon appellant.

It therefore follows that the trial Judge was not in error in overruling respondent's motion for a directed verdict, and that he erred in granting the motion for judgment *non obstante veredicto.*

Reversed.

M<small>R</small>. C<small>HIEF</small> J<small>USTICE</small> B<small>ONHAM</small>, M<small>ESSRS</small>. J<small>USTICES</small> F<small>ISH-</small>
<small>BURNE</small> and S<small>TUKES</small> and M<small>R</small>. A<small>CTING</small> A<small>SSOCIATE</small> J<small>USTICE</small> L.
D. L<small>IDE</small> concur.