16629

THOMAS v. ATLANTIC COAST LINE R. CO.

(71 S. E. (2d) 403)

*Messrs. Marion F. Winter,* of Moncks Corner, and *Hagood, Rivers & Young,* of Charleston, *for Appellant,* cite:

*Messrs. Dennis & Dennis,* of Moncks Corner, and *Legare & Hare,* of Charleston, *for Respondent,* cite: *As to there being sufficient material evidence tending to establish actionable negligence on the part of the defendant:*

May 21, 1952.

BRAILSFORD, JR., Acting Associate Justice.

In this action for damages for personal injury, brought by plaintiff under the Federal Employers' Liability Act, 45 U. S. C. A. § 51 *et seq.,* defendant's motions for nonsuit and for directed verdict were overruled and the jury found a verdict in favor of plaintiff for $12,500.00. Thereupon the defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. Both motions were overruled by formal order and this appeal was taken.

The motions for nonsuit and for directed verdict were upon the grounds:

"First: That there is a complete failure to show any negligence on the part of the railroad, which proximately caused the alleged injury of the plaintiff.

"Second: That the only reasonable inference to be drawn from the testimony is that, if the plaintiff fell as alleged, and injured himself, he was handling a simple tool that he knew how to handle, according to his own testimony, and the sole proximate cause of the plaintiff's alleged injury was his negligent handling of the tool."

Additional grounds incorporated by defendant in its motion for judgment notwithstanding the verdict need not be stated because. (at least in the absence of special circumstances not appearing here, as in the cases of *Gleaton v. Southern R. Co.,* 208 S. C. 507, 38 S. E. (2d) 710 and *Walker v. Atlanta & Charlotte Air Line R. Co.,* 210 S. C. 443, 43 S. E. (2d) 206) the authority of the trial judge to grant such a motion is limited to the grounds relied upon in the motion for directed verdict. *Bohumir Kryl Symphony Band v. Allen University,* 196 S. C. 173, 12 S. E. (2d) 712.

It follows that the only questions for review are whether it was error for the trial judge to refuse to grant defendant's motion for directed verdict on either of the grounds stated in this motion; and whether it was error for him to refuse to set the verdict aside as being capricious and excessive, which latter question was presented by defendant's motion for new trial.

Federal decisions are controlling as to the rights and ■ liabilities of the parties under the Act. There is no need here to cite or review these authorities. That has been done recently enough in *Haselden v. Atlantic Coast Line Railroad Co.,* 214 S. C. 410, 53 S. E. (2d) 60 and Johnson v. Atlantic Coast Line Railroad Co., 217 S. C. 347, 60 S. E. (2d) 678.

It is settled law that liability under the Act is for injury resulting in whole or in part from negligence of the defendant. Assumption of risk as a defense has been obliterated in all of its aspects and contributory negligence is not a bar to recovery but is to be considered in apportionment of damages.

In cases arising under the Act, the historic function ■ of the jury in passing upon questions of negligence and proximate cause has been fully preserved and zealously guarded. Unless there is a complete absence of probative facts on which a reasonable inference of liability may be founded, these issues are submissible.

With these principles in mind, we review the evidence in a light favorable to the verdict.

Tom Thomas, the plaintiff, for some two years prior to his injury on December 12, 1946, was employed by the defendant as a laborer on a section gang engaged in track maintenance and repair. The gang was directed in its work by a foreman and one or more assistant foremen. The foreman, one D. Turner, was in charge of the tools and implements used by the gang, and it was his duty to inspect them regularly. On the day of the injury, four or five tie tongs

were issued to members of the gang, including plaintiff, to be used in pulling old ties from the roadbed. These implements very much resemble large ice tongs and operate on the same principle. Plaintiff complained to the foreman that his tongs were dull, "not sharpen". Although the foreman was furnished with files to sharpen tools as required, he ordered plaintiff to go on to work telling him that they didn't "have time to sharpen them now". Plaintiff complied with this order and, after pulling out several ties, undertook, in the usual way, to hook the tongs in "a big old oak tie in the bed". When he pulled, the tongs slipped off the hard wood and plaintiff fell backward, striking his left arm on a tie which lay behind him. One of the other laborers picked him up, took the tie tongs and gave him a shovel, with which, although his left arm hurt him, plaintiff bladed ties for the remainder of the day. Blading is the process of shoveling rock under the new ties after they have been placed in the bed.

Plaintiff continued at this work on the following day, which was Friday. The gang did no work Saturday or Sunday. Plaintiff reported for work Monday, December 16th, but testified that by noon his arm, which had been painful meantime, hurt so badly that he had to stop. After suffering with the arm during the night, he told the foreman next day that something would have to be done about it. According to plaintiff, the foreman suggested that he go to one of the drug stores in nearby Lake City. Instead he left the job and went to his home. While plaintiff estimated his absence from the job to have been about two weeks, the record kept by the foreman indicated that he resumed work on December 27th.

While at home, plaintiff suffered severe pain in his arm, consulted two physicians and adopted various measures to assuage his suffering.

After his return on December 27th following the injury, plaintiff continued to work with the same section gang for more than five months. However, he testified that he suf-

fered from his injury during this entire period, that he could not use his left arm and that he performed only the comparatively lighter tasks of blading ties and scattering rock, although he sometimes assisted in lifting ties with an iron bar.

Finally about June 5, 1947, plaintiff told his foreman that he couldn't return to work the next week because of the pain in his arm. He was advised to "stay off it; go home and rest a while".

Some time after June 5, 1947, plaintiff consulted a Dr. Willis, who sent him to Dr. J. N. Walsh at the Berkeley County Hospital. The arm was x-rayed on August 8 and it was found that plaintiff was suffering from chronic osteomyelitis of the left radius (one of two bones in forearm.) About one-third of this bone was removed by operation on September 18, 1947.

Osteomyelitis is an infection of the bone. According to the medical testimony one of the three common causes of this disease is an injury such as plaintiff suffered on December 12, 1946. When osteomyelitis results, the infection commences at the site of the injury within a period of not longer than two weeks. The acute stage, which commences with the infection, usually lasts about two weeks and during this stage the patient is ill and has high fever. This is followed by the chronic stage which may last indefinitely. The affected area is painful during both stages.

Plaintiff stated that his arm hurt him from the time of his fall until the operation and that the operative scar was at the site of the injury to his forearm.

Except for the medical evidence, most of the foregoing summary has been taken from plaintiff's own testimony. It was corroborated at least in part by the testimony of two of his fellow laborers and of his wife. One of the former testified that the tongs were dull and that he saw plaintiff fall while using them. After that he continually complained and showed symptoms of pain. When asked whether plain-

tiff had not worked all right, this witness replied, "No, sir, he worked with pain." The testimony of the other laborer called by plaintiff was to the same general effect.

Plaintiff's wife testified that he came home from the railroad "with his arm all swole up" and, for the first time, complained of pain. She "bathed him, rubbed him, put his arm on two pillows". It is not clear from her testimony whether she was referring to plaintiff's return home in December 1946 or his return in June, 1947, but plaintiff's testimony tends to connect it with the former.

The testimony of defendant's witnesses, the gang foreman, the assistant foreman, an apprentice foreman, the gang cook and three laborers was completely at variance with that of plaintiff and his witnesses. According to them no incident involving injury to plaintiff occurred while the gang was at work, and plaintiff was under no physical handicap whatever from December, 1946, until June 5, 1947. However, there was no counter-explanation of why plaintiff left apparently suitable employment and, after doing so, he was found to be suffering from a condition calculated to produce the symptoms which he says forced him to quit work.

Furthermore, the foreman, who denied knowing anything whatever about any injury to plaintiff, testified that he had an independent recollection of the date in question, and, while being pressed on cross examination as to when he had last sharpened the tongs before December 12th he replied that he had sharpened them "in a day or so before *the thing happened*". The jury might with reason have drawn the inference that the italicized words had reference to plaintiff's injury and that this was the incident which fixed the date in the foreman's mind.

We think it apparent, when the conflicts in the testimony are resolved against the defendant, a strictly jury function, that there is an evidentiary basis for the conclusion, which is implicit in the verdict, that plaintiff was injured while employed by the defendant and left his

employment because of disability resulting in whole or in part from this injury.

"* * * Under these circumstances it would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury. * * *

"* * * Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." *Lavender v. Kurn,* 327 U. S. 645, 66 S. Ct. 740, 744, 90 L. Ed. 916.

As to the claimed insufficiency of the evidence to make the question of actionable negligence a jury issue, defendant relies upon *Fore v. Southern Ry. Co.,* 4 Cir., 178 F. (2d) 349, 353, as being "perhaps the leading case on a similar state of facts". In that case Fore claimed to have injured his shoulder when he attempted to unscrew a nut with a 12" wrench. There is no testimony that there was anything wrong with the wrench, and none that it slipped. Apparently Fore's claim was that the force which he applied to the wrench in attempting to remove the nut caused the injury. In sustaining judgment for the defendant notwithstanding verdict for plaintiff the Circuit Court summed up its conclusion in these words:

"* * * Here Fore offered no evidence whatever even to prove any element of foreseeable danger in carrying out the order in question. Surely it would seem a matter of common sense and ordinary experience that there was no reasonably foreseeable danger when (under the facts of this case) a young giant, six feet five inches tall, weighing two hundred and thirty-five pounds and in perfect health, is

ordered to unscrew a small nut, easily within his reach, with a wrench, which is the almost universally accepted tool for that purpose."

Here we think there was a reasonably foreseeable danger that dull tongs would slip when used for the intended purpose and that it was for the jury to say whether injury to the employee was a reasonably probable result.

The second ground of the motion under consideration is complementary of the first and, for the reasons already stated, was properly overruled. Although the phrase "simple tool" was used in stating the ground, there has, quite properly, been no reliance on the doctrine, which need not be discussed.

Defendant by its exceptions relating to the failure of the trial judge to grant a new trial contends that the verdict is shown to have been the result of passion or prejudice by, (1) its excessiveness in view of the injuries and (2) the fact that the jury returned a verdict after deliberating only twenty minutes.

Here the testimony is sufficient to warrant the conclusion that plaintiff, dependent upon manual labor for a livelihood, with a life expectancy slightly in excess of eighteen years, formerly capable of earning $36.00 per week, has, as a result of his injury, suffered the virtually total, permanent loss of the use of his left arm, in consequence of which he has been unable to obtain employment up to the time of the trial in September, 1950. In this situation, we would not be justified in setting the verdict aside on the theory that it is legally excessive. See *Haselden v. Atlantic Coast Line Railroad Co.,* 214 S. C. 410, 53 S. E. (2d) 60; *Bowers v. Charleston and W. C. Ry. Co.,* 210 S. C. 367, 42 S. E. (2d) 705 and *Vernon v. Atlantic Coast Line Railroad Co.,* S. C., 70 S. E. (2d) 862.

No exception has been taken to either the conduct of the trial or the charge of the able presiding judge. While it was unusual for the jury to arrive at its

verdict in so short a time, we would not be justified in concluding therefrom that the jury acted capriciously or that it was actuated by passion or prejudice.

"Appellate courts should be slow to impute to juries a disregard of their duties; and to trial courts a want of diligence or perspicacity in appraising the jury's conduct." *Fairmount v. Cub Fork Coal Co.*, 287 U. S. 474, 53 S. Ct. 252, 255, 77 L. Ed. 439.

All exceptions are overruled and the judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., and HENDERSON, A. A. J., concur.