16876

ZEMP CONST. CO. v. HARMON BROS. CONST. CO. *ET AL.*
(82 S. E. (2d) 531)

*Messrs. Thomas, Cain & Nettles,* and *John W. Crews,* of Columbia, *for Appellants,*

*Messrs. J. Clator Arrants,* of Camden, and *William Elliott,* of Columbia, *for Respondent,*

June 2, 1954.

BRAILSFORD, Acting Associate Justice.

This is an appeal by Harmon Brothers Construction Company and its surety, National Surety Corporation of New York, from a judgment for $4,000 recovered against them by Zemp Construction Company.

The controversy arose out of the construction of five motor storage garages at National Guard Armories in South Carolina. The prime contract was between appellant Harmon Brothers Construction Company and the Government of the United States. In brief, this contract provided for the construction of five garages for the sum of $23,799 each, to

be paid in monthly instalments as the work progressed. Appellant sub-let the construction of three of the garages to respondent Zemp Construction Company. The written agreement between these parties (not included in the record on appeal) apparently consisted of a proposal and acceptance, which simply provided that respondent would construct three of the garages, according to the specifications of the prime contract, in consideration of the payment by appellant of $21,500 each.

Construction was commenced by respondent about June 1, 1948. Bills for materials purchased were sent directly to appellant and paid by it. Some comparatively small items were purchased for cash by respondent.

On July 9th appellant made an advance of $1,000 to respondent and two weeks later made an advance of $800. These two advances were followed by four consecutive weekly payments, the last of which was made on August 12, 1948. These advances or partial payments, which aggregated $6,300, were apparently made on the oral requests of Mr. Zemp, president of the respondent corporation. Further advances were requested and refused. Respondent ceased work and all five of the garages covered by the prime contract were completed by appellant.

The complaint alleges that appellant's failure to make further advances, although "heavily indebted" to respondent, was a violation of the "sub-contract and the agreements thereunder" after which a new agreement was made between the parties, in substance:

That appellant would complete the construction, using and employing respondent's workmen, machinery and equipment; and

That appellant would reimburse respondent for all labor and other costs paid by it, pay to respondent a reasonable rental for its machinery and equipment, and pay to respondent the amount due it under the sub-contract at the time the new arrangement was made.

The complaint claims the sum of $6,651.06 to be due appellant under the "sub-contract and the agreements, terms and conditions thereunder".

The answer denies that there was any agreement between the parties except the original sub-contract and alleges that appellant was forced to complete the garages at a loss to itself when respondent, without justification, abandoned the construction.

Three of the exceptions impute error to the Circuit Judge in failing to direct a verdict for the defendants or to order judgment for them notwithstanding the verdict. In considering these exceptions this Court is confined to the sole issue of whether it was error to refuse appellants' motion for the direction of a verdict on the ground on which such motion was rested at the trial. *Bohumir Kryl Symphony Band v. Allen University,* 196 S. C. 173, 12 S. E. (2d) 712. *Thomas v. Atlantic Coast Line Ry. Co.,* 221 S. C. 462, 71 S. E. (2d) 403. We quote the motion for the direction of a verdict:

"If your Honor pleases, the defendants at this time move for a directed verdict in their favor, upon the ground that there is not sufficient evidence upon which a jury could find that there was any contract, which Mr. Harmon made with Mr. Zemp, and which Mr. Harmon violated."

As already pointed out, the written contract between the parties simply called for the construction of three garages by respondent for a fixed price. Early in Mr. Zemp's testimony, he was asked to state the agreement between the parties as to when payments on the contract price would be made. This was objected to upon the ground that such testimony would vary the terms of the contract, which contemplated payment on completion.

The able presiding Judge ruled that testimony as to such an agreement was competent, since the written contract only fixed the total consideration and was silent as to when it should be paid. The correctness of this ruling is not before us because no exception was taken to it.

It follows that the question of whether there was "sufficient evidence upon which a jury could find that there was any contract * * * which Mr. Harmon violated" must be considered in the light of the testimony on this point. It is susceptible of these inferences:

Appellant knew that respondent had very little capital to invest in the jobs and agreed to pay for materials and to make periodic advances to respondent as the work progressed. Although there was no specific agreement as to when such advances were to be made nor upon what evidence, the parties adopted the practice of weekly advances on requests of Mr. Zemp. When further payment was finally refused it was not for the reason that request therefor was premature. According to Mr. Zemp, he was put off for approximately one week on the ground that appellant was short of funds, before being told that payment was withheld because appellant did not know whether the amount of work claimed had been done.

Respondent claims to have had $8,600 invested in the construction, not including such items as equipment used, transportation and overhead and supervisory expense, at the time of this refusal.

Mr. Zemp testified that the appellant "had a large margin in the job" and that advances were never requested for "over 60% of what was due".

Estimates submitted to the Government by appellant and approved by it indicated that as of the 1st of August the three garages covered by the sub-contract were fifty-two per cent complete. While this estimate included materials on the site, the average cost of these for the completed garages was only $11,547.10 (according to appellant's auditor) and Mr. Harmon testified that "not near all" had been purchased when appellant took over the work several weeks after the estimate had been submitted.

Without further comment on the evidence, we think that it presented a jury issue as to whether there was an agreement between the parties as to advance payments and whether such agreement was violated by appellant.

"The failure to pay an instalment of the contract price as provided in a building or construction contract is a substantial breach of the contract, and gives the contractor the right to consider the contract at an end, to cease work, and to recover the value of the work already performed." 9 American Jurisprudence, page 53. See Annotation: Ann. Cas. 1916 C 54.

There is an additional reason why it was proper to overrule the motion for the direction of a verdict.

There was some testimony in support of the allegations of the complaint that respondent performed certain services for appellant on a fourth garage, not covered by the sub-contract, and that appellant used respondent's equipment in completing the construction under the alleged new agreement. Respondent's right to recover compensation for these services and for the use of its equipment did not depend upon proof that the sub-contract had been violated.

This disposes of the first and fourth exceptions. The fifth exception may not be considered because it assigns as error the refusal of the presiding Judge to direct a verdict or to grant judgment notwithstanding the verdict on a ground which was not included in the motion for the direction of a verdict.

The remaining exceptions (number two and number three) complain of error in the admission of evidence. Exception two relates to "Plaintiff's Exhibit No. 5."

This exhibit consisted of a detailed statement of the manner in which respondent arrived at the amount ($6,651.06) claimed to be due it by appellant.

The summary sheet was entitled "Statement of Expenditures". Twelve "schedules" were attached in support of the items carried in the summary. Mr. Zemp testified that the

exhibit was a "statement of his disbursements", prepared by him from original records, such as cancelled checks, receipted bills and weekly payrolls, within a few days after "Mr. Harmon said he would take over the responsibility." This occurred prior to September 1, 1948. Yet there are entries dated as late as October 22, 1948. These could not have been included in the totals, as they were, if the exhibit had been prepared at an earlier date. Indeed, the conclusion is inescapable that it was prepared for use at the trial because it was never presented to appellant.

When the witness began his explanation of this statement, objection was interposed upon the ground that it was not an original record, was not made in the normal course of business but was prepared after the dispute arose.

The Court ruled that the witness would be allowed to use the statement to refresh his memory and this was, in effect, agreed to by counsel for appellant on the witness' assurance that the original records substantiating it would be produced in court the following morning.

After the witness had been thus examined, the statement itself was offered in evidence. Objection thereto was promptly sustained in this language:

"I don't think there is any doubt about the fact that those statements are inadmissible, Mr. Elliott. The witness has been permitted to refresh his memory from the statements which he said he prepared. Beyond that, I don't think they are admissible."

Shortly afterward the court recessed for the day. Immediately upon the resumption of the trial on the following morning, the presiding Judge announced his conclusion that the statement should have been admitted in evidence and it was so admitted over the objection of counsel for appellant. We think that this was error which requires that a new trial be granted.

It is entirely clear that this memorandum was offered as a summary or compilation of original records evidencing

respondent's expenditures or disbursements on the jobs in question. Indeed, the only argument advanced in support of its admission (except the untenable reliance upon the rule of *res gestae*) was the impracticality of going "through every check, and voucher, and payroll, and every payment for material and equipment."

Apparently counsel and the Court had in mind the rule which permits the introduction of a summary or analysis of voluminous or complicated records, themselves properly in evidence, or made available to the adverse party. 32 C. J. S. Evidence, §§ 698, 788. The difficulty is that proper foundation for the application of the rule was not and could not be laid. While a number of cancelled checks and perhaps other records were in court these by no means supported all of the claimed disbursements listed in the exhibit. Mr. Zemp testified on cross-examination:

"A. All I know is that I had receipted bills at the time I made this up. I had receipted bills in my files for each item that I put on the list. My Superintendent and Foreman on the job, of course, handled the transactions.

\* \* \*

"Q. How about the Smith Hardware Company here (indicating)? Did you pay them? A. If it's on this list, it's in the same condition as this other.

"Q. But you don't have any receipted bill from them, do you? A. This list was made up from receipted bills three years ago.

"Q. But you haven't got them? A. No, sir, not here.

\* \* \*

"Q. In fact, there is nothing to show that these bills have been paid, except your say so, isn't that right? A. That's right."

Furthermore, of the total of $12,951.06, against which the dvance payments were credited in arriving at the "balance due", only $8,644.61 represented claimed expenditures for labor, supplies and materials. The substantial dif-

ference is accounted for by claimed allowances for overhead, use of equipment, compensation for the services of respondent's president, etc. and even includes an item of $948.71 "as compromise settlement" for profit. To this extent the exhibit could not have been qualified as a summary of original records even if all of these had been produced in court. Instead, (paraphrasing from appellants' brief) it was the mere statement of the claim which respondent "sought to prove, not the proof of it." The unconditional admission of this exhibit as independent evidence was calculated to create the erroneous impression "that in itself it was proof rather than plea." We cannot reasonably conclude that the error was harmless. The presumption is otherwise. *Cooper Corporation v. Jeffcoat*, 217 S. C. 489, 61 S. E. (2d) 53.

Exception number three assigns as error "the admission of the testimony of the plaintiff, S. C. Zemp, which tended only to vary the contract between the parties from a fixed price contract * * * into a contract to reimburse plaintiff for all amounts expended * * *", in violation of the parol evidence rule. The testimony of this witness covers approximately eighty pages of the printed record. We have searched it with care but have not discovered any testimony of the tenor referred to in the exception or which was objected to by counsel on this ground.

For the reasons stated, the judgment is reversed and the case remanded for a new trial.

STUKES, TAYLOR, and OXNER, JJ., concur.

BAKER, C. J., not participating.