487 S.E.2d 590

**The STATE, Respondent,**

v.

**Elaine C. GULLEDGE, Petitioner.**

**No. 24621.**

Supreme Court of South Carolina.

Heard March 18, 1997.

Decided May 27, 1997.

Refiled June 23, 1997.

222

Michael E. Stegner, Camden; and South Carolina Office of Appellate Defense, Columbia, for petitioner.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General William E. Salter, III, Columbia; and Solicitor John R. Justice, Chester, for respondent.

## ORDER

The original filed as Op. No. 24621 on May 27, 1997, is hereby withdrawn and the following substituted therefor.

/s/ Ernest A. Finney, Jr., C.J.

/s/ Jean H. Toal, J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

BURNETT, Justice.

This Court granted certiorari to review the Court of Appeals' opinion in *State v. Gulledge,* 321 S.C. 399, 468 S.E.2d

665 (Ct.App.1996), which upheld petitioner's conviction and sentence. We affirm as modified.

## FACTS

Petitioner pled guilty to breach of trust in an amount greater than $5,000.00. Following the preparation of a pre-sentence investigation report by the South Carolina Department of Probation, Pardon and Parole, the sentencing proceeding, including a restitution hearing, was conducted. At the hearing, the trial judge found the State had proven petitioner had embezzled $464,820.91 from Lancaster Motor Company (LMC). In determining the amount of restitution petitioner must pay, the trial judge considered the financial resources of petitioner and the victim and the burden the manner or method of restitution would impose upon the petitioner and victim; the ability of petitioner to pay restitution; the anticipated rehabilitative effect of restitution on petitioner; any burden or hardship upon the victim as a result of the criminal acts; and the mental, physical, and financial well being of the victim. *See* S.C.Code Ann. § 17–25–322 (Supp.1996). The trial judge ordered petitioner to pay restitution in the amount of $210,000.00. Petitioner was sentenced to eight years confinement, suspended upon the service of three years, followed by five years' probation, and the payment of restitution at the rate of $3,500.00 a month or $42,000.00 a year for five years, with payment to begin upon her release from confinement.

Petitioner was employed by LMC as its head bookkeeper from 1986 to November 1991. Customers indebted to General Motors Acceptance Corporation (GMAC) under financing arrangements effected payment to GMAC by delivering cash payments on their account to LMC's cashiers. The cashiers executed a receipt in triplicate, with one copy given to the customer, one copy retained by LMC, and one copy sent to GMAC. At the end of each day, all cash and receipts were given to petitioner and she recorded the payments in LMC's cash receipts journal. Petitioner then wrote a check to GMAC from an LMC account in the amount of the receipts for that day.

In 1991, as a result of unexplained financial difficulties, Wilhelmenia McWhirter, an owner of LMC, enlisted the aid of accountants at Burns Chevrolet and agents of South Carolina Law Enforcement Division (SLED). It was discovered petitioner had written approximately $90,000.00 in checks from an LMC account directly to a number of her creditors to pay credit card bills and car payments.[1]

This investigation also revealed discrepancies between the amount of the GMAC receipts for the day and the amount recorded in the cash receipts journal. These discrepancies occurred on a routine basis beginning shortly after petitioner was employed by LMC. Despite the fact that a lesser amount would be recorded in the journal, petitioner would write a check to GMAC in the amount reflected by the actual receipts for the day, with LMC absorbing the shortfall.[2] The total amount of the discrepancies from the GMAC account during the five year period was $347,486.00. Although these funds could not be traced to petitioner, evidence was presented at the restitution and sentencing hearing that she was the sole person in charge of the books and was the person responsible for totaling the GMAC receipts, entering this amount in the daily cash journal, and writing checks to GMAC.

## ISSUES

I. Did the trial court and Court of Appeals err in holding the documents requested by petitioner under Rule 5(a)(1)(C), SCRCrimP, were not within the possession, custody or control of the State and were, therefore, not subject to discovery?

II. Did the Court of Appeals err in holding petitioner's argument regarding *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was not preserved for review?

---

**1.** Petitioner stipulated to this amount at the beginning of the restitution hearing.

**2.** Mrs. McWhirter compiled a handwritten summary, in ledger form, of the daily transactions and shortages for the 1986 to 1991 period. The State used this summary, with no further documentation, to substantiate its allegations that petitioner took funds from the GMAC account.

III. Did the trial court and Court of Appeals err in holding a handwritten summary was admissible in petitioner's restitution hearing even though the original documents were not available to her in court?

## DISCUSSION

### I.

 Petitioner contends the Court of Appeals erred in upholding the trial court's denial of her motion pursuant to Rule 5(d)(2), SCRCrimP, to prohibit the prosecution from introducing during the restitution hearing the handwritten summary prepared by Mrs. McWhirter. Petitioner asserts the prosecution failed to fully comply with requests made by petitioner pursuant to Rule 5(a)(1)(C), SCRCrimP, for access to the LMC documents used to compile the handwritten summary. Specifically, petitioner argued she had requested the documents Mrs. McWhirter relied upon in compiling her handwritten summary,[3] and the solicitor failed to provide these documents.

In advance of the restitution hearing, the solicitor provided petitioner's counsel with a copy of the handwritten summary. However, the solicitor did not provide petitioner's counsel with either the documents LMC used to prepare the summary or with copies of these documents. The solicitor claimed the documentation was voluminous and it was unreasonable to expect the prosecution to introduce that amount of documentation or provide it to the defense. When contacted by petitioner's counsel about these documents, the solicitor suggested counsel call LMC's president and "work it out" with him. The solicitor informed counsel that LMC would be happy for him to come to LMC and they would provide any requested documentation. However, instead of taking this approach, counsel asked the solicitor for copies of monthly reports LMC was required to send General Motors, which again was claimed to be a voluminous amount of documentation. The

---

3. Petitioner argued these documents were necessary to show that, contrary to the testimony of LMC's president and Mrs. McWhirter, employees other than petitioner often made entries in the cash receipts journal and handled the cash and receipts. Petitioner's theory was someone else took the money from the GMAC account.

solicitor again told counsel to contact LMC. Instead of arranging to inspect the books, counsel contacted LMC, requested copies of selected documents and offered to pay for copying. LMC's president told counsel he could not copy this material overnight. Because of confusion over who was to contact whom, LMC's president and petitioner's counsel did not communicate again. At the restitution hearing, counsel claimed LMC did not afford him an opportunity to inspect and copy the documents on which the handwritten summary was based.

The trial judge found Rule 5(a)(1)(C) only requires the solicitor to provide the defense with documents which are in the possession, custody or control of the prosecution and are material to the defense. He found the solicitor did not have in his possession the documents petitioner sought and the solicitor had provided petitioner with all of the documentation he did have in his possession; therefore, he had complied with Rule 5. The Court of Appeals agreed with this interpretation of Rule 5(a)(1)(C).

Rule 5(a)(1)(C), SCRCrimP, states the following:

Upon request of the defendant the prosecution shall permit the defendant to inspect and copy books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are *within the possession, custody or control of the prosecution,* and which are material to the preparation of the defense or are intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant.

(emphasis added).

We agree with the interpretation of the emphasized language of Rule 5(a)(1)(C) made by the trial court and the Court of Appeals. The majority of state and federal courts who have interpreted similar rules in their jurisdictions, have held that the language means what it says: if the prosecution does not have the material or evidence sought by the defense actually in its possession, disclosure is not required. The only exception to actual possession is where the evidence is in the possession of another government agency. *See* James W. Moore, 8 *Moore's Federal Practice* ¶ 16.05[1] (2d ed.1995); Charles A. Wright, *Federal Practice and Procedure* § 254

(1982); 23 Am.Jur.2d, *Depositions and Discovery* § 421 (1983); 22A C.J.S., *Criminal Law* § 489 (1989); Annotation, *Books, Papers, and Documents Subject to Discovery by Defendant Under Rule 16 of Federal Rules of Criminal Procedure*, 108 A.L.R.Fed. 380 (1992); Annotation, *Discovery and Inspection of Prosecution Evidence Under Federal Rule 16 of Criminal Procedure*, 5 A.L.R.3d 819 (1966).

The documents the defense sought in this case were in the possession of a private third party (LMC) and were not in the possession of the prosecution; therefore, petitioner's motion to suppress the written summary based on an alleged violation of Rule 5 was properly denied.

## II.

Prior to the restitution hearing petitioner also filed a discovery motion pursuant to *Brady v. Maryland*.[4] Petitioner argues the failure of the prosecution to comply with this request and disclose the original documents used to compile the written summary, which petitioner contends were "potentially favorable," constituted a violation of her due process rights. The Court of Appeals found petitioner's *Brady* argument was not preserved for review because the trial court did not rule on the issue. Petitioner claims this ruling was error. We agree.

After the trial judge denied petitioner's motion to suppress the written summary pursuant to Rule 5, petitioner requested the trial judge prohibit the introduction of the summary because the supporting documents were potentially exculpatory and the solicitor failed to provide the documents to petitioner. Because the trial judge, when ruling on this issue during the restitution hearing, only found the solicitor had complied with Rule 5, it is questionable whether the motion to suppress pursuant to *Brady* was ruled upon by the trial judge. However, the issue was clearly raised in the motion to reduce sentence and restitution and the trial judge denied the motion. Thus, the issue is preserved for review.

Nonetheless, the issue is without merit because, as discussed in Issue I, the evidence petitioner claims was not

4. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

disclosed pursuant to the *Brady* motion was not in the possession of the prosecution. *See State v. Nance,* 320 S.C. 501, 466 S.E.2d 349, *cert. denied,* —— U.S. ——, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996) (*Brady* requires the State disclose evidence *in its possession* favorable to the accused and material to guilt or punishment). Thus, we affirm the trial judge's denial of disclosure under *Brady.*

### III.

Petitioner contends the trial judge and the Court of Appeals erred in finding the handwritten summary admissible because the summary constituted hearsay and violated the best evidence rule. We disagree.

The Court of Appeals found the handwritten summary was received by the trial court as information during a sentencing proceeding and was used by the trial judge for the purpose of determining the proper sentence to impose upon petitioner, including restitution. Because the Court of Appeals found the restitution hearing to be part of the sentencing proceeding, it concluded the trial court may conduct an inquiry broad in scope, largely unlimited either as to the kind of information it may consider or the source from which the information may come, to assist it in determining the amount of restitution to be imposed. *State v. Franklin,* 267 S.C. 240, 226 S.E.2d 896 (1976); *State v. Cantrell,* 250 S.C. 376, 158 S.E.2d 189 (1967) (when sentencing a convicted defendant, a trial court exercises a wide discretion regarding the sources and types of evidence it may use to assist it in determining the kind and extent of punishment to be imposed). Thus, the Court of Appeals held the trial court did not abuse its discretion in admitting the handwritten summary.

■ We agree. A restitution hearing is part of the sentencing proceeding and thus, the trial court may consider information which may be inadmissible under evidentiary rules.

■ In a sentencing proceeding, evidentiary rules are inapplicable.[5] *Williams v. New York,* 337 U.S. 241, 69 S.Ct.

---

5. Although the SCRE were not in effect at the time of the restitution hearing, Rule 1101(d)(3), SCRE, provides these evidentiary rules do not

1079, 93 L.Ed. 1337 (1949) (a sentencing judge need not follow the rules of evidence when determining the appropriate punishment for a convicted defendant); *Franklin, supra; Cantrell, supra; see also* Arthur W. Campbell, *Law of Sentencing* § 10.1 (2d ed.1991); Thomas W. Hutchison, et al., *Federal Sentencing and Practice* at 649 (2d ed.1994); 24 C.J.S., *Criminal Law* § 1494 (1989) (the ordinary rules of evidence are inapplicable in proceedings to determine what sentence to impose). However, the admissibility of evidence is limited by constitutional provisions which require the evidence to be relevant, reliable and trustworthy. *See United States v. Silverman*, 976 F.2d 1502 (6th Cir.1992), *cert. denied*, 507 U.S. 990, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993) (hearsay evidence inadmissible at trial may be considered at sentencing); *United States v. Holmes*, 961 F.2d 599 (6th Cir.), *cert. denied*, 506 U.S. 881, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992); 24 C.J.S., *Criminal Law* § 1494 (1989) (hearsay is admissible if relevant and reliable); Thomas W. Hutchison, et al, *Federal Sentencing and Practice* at 649 (2d ed.1994) ("a court may consider any relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided the information has sufficient indicia of reliability to support its probable accuracy").

■ The restitution hearing is part of the sentencing proceeding. *See* S.C.Code Ann. § 17–25–322 (Supp.1996) ("in addition to *any other sentence* which it may impose, the court shall order the defendant make restitution ..."); S.C.Code Ann. § 16–3–1530(D)(3) (Supp.1996) ("[t]he judge shall order restitution at every sentencing for a crime against person or property ... unless the court finds a substantial and compelling reason not to order restitution"); S.C.Code Ann. § 17–25–125 (1976); *see also United States v. Anglian*, 784 F.2d 765 (6th Cir.), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986) (a restitution order is in the nature of a sentence, and the district court is vested with wide discretion in determining the appropriate sentence for a convicted defendant). Therefore, during the restitution hearing, the rules governing sentencing proceedings should apply. *See Harris v. Alabama,*

---

apply in sentencing proceedings, except in the penalty phase of a capital case.

542 So.2d 1312 (Ala.Crim.Ct.App.1989) (because restitution is not intended to be a civil action, a restitution hearing shall be governed by the same rules as a sentencing hearing; therefore, any evidence the court deems to have probative value may be received regardless of its admissibility under the rules of evidence); *see also,* 24 C.J.S., *Criminal Law* § 1780 (1989) (the trial court is not bound by strict rules of evidence during restitution hearings); Notes, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv.L.Rev. 931, 941–46 (1984) (suggesting imposition of a restitution order requires no greater procedural protection than those normally employed in sentencing; therefore, a convicted defendant is only entitled to notice and an informal hearing in which the rules of evidence do not apply).

■ Although the trial judge is allowed broad discretion in conducting the restitution hearing, the statute contemplates an adversarial hearing to prove the amount of restitution. S.C.Code Ann. § 17–25–322 (Supp.1996). Therefore, under the due process clause of both the South Carolina Constitution and the United States Constitution,[6] the defendant must receive notice of the hearing, and during the hearing, the defendant must be given the opportunity to be heard and to cross-examine witnesses. Further, the evidence admitted during the restitution hearing must be reliable and trustworthy. Here, we find the restitution hearing was conducted properly and the trial judge did not abuse his discretion in admitting the handwritten summary.

■ Further, even under the evidentiary rules, the trial judge did not err in allowing the handwritten summary into evidence. Hearsay is an out of court statement offered to prove the truth of the matter asserted. However, the fact that evidence is hearsay is unimportant if the declarant testifies and is available for cross-examination.[7] *State v. Garner,* 304 S.C. 220, 403 S.E.2d 631 (1991); *State v. Caldwell,* 283 S.C. 350, 322 S.E.2d 662 (1984). Here, Mrs. McWhirter

6. S.C. Const. art. 1, § 3; U.S. Const. amend. XIV.

7. We note under Rule 801, SCRE, this analysis is no longer applicable. *See South Carolina Rules of Court: State and Federal 1998* p. 144 (1997).

testified as to her preparation of the written summary and petitioner cross-examined Mrs. McWhirter about this summary. Accordingly, there was no hearsay violation.

■ The admission of this written summary into evidence did not violate the best evidence rule. In *Zemp Const. Co. v. Harmon Bros. Const. Co.*, 225 S.C. 361, 82 S.E.2d 531 (1954), this Court held the admission of a nearly identical written summary without admission of the supporting documentation to be a violation of the best evidence rule. However, the summary would have been admissible if the supporting documentation had been made available to the adverse party. *Id.*

Here, counsel for petitioner knew prior to the hearing the State intended to use the summary as the sole evidence of financial loss caused LMC by petitioner and the solicitor informed counsel LMC would allow counsel to inspect and copy the documents used in preparing the summary. Further, at the hearing, petitioner was allowed to cross-examine Mrs. McWhirter on the accuracy of the summary. Therefore, the handwritten summary was properly admitted into evidence.

AFFIRMED AS MODIFIED.

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.