OPINION
HUDSON, Justice.
This case presents the issue of whether the Minnesota Rules of Evidence apply in a court trial, which was held in accordance with Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to determine whether any aggravating sentencing factors exist. Following a straight guilty plea, appellant Julian Sanchez-Sanchez waived his right to have a jury determine whether aggravating factors existed to justify an upward durational departure in his sentence. Instead, Sanchez-Sanchez submitted the Blakely question to the district court. Without objection, the district court failed to apply the rules of evidence during the Blakely court trial. After hearing the testimony of the State’s sole witness at trial, the district court found the existence of several aggravating factors and sentenced Sanchez-Sanchez to 240 months in prison, which reflected an upward durational departure from the presumptive sentencing range of 74 to 103 months. The court of appeals affirmed, concluding in part that the rules of evidence do not apply during a Blakely court trial. Based on the language of Minn. R. Evid. 1101 and State v. Rodriguez, 754 N.W.2d 672 (Minn.2008), we conclude that the rules of evidence apply in a Blakely court trial, but that such a conclusion was not previously clear or obvious. We therefore affirm as modified.
I.
In March 2013, the State of Minnesota charged appellant Sanchez-Sanchez with conspiracy to commit a first-degree sale of methamphetamine while a co-conspirator possessed a firearm. See Minn.Stat. §§ 152.021, subd. 1(1), 152.096, subd. 1, 609.101, subd. 3, 609.11 (2014). The charge stemmed from an investigation by the Federal Bureau of Investigation (FBI) of a large interstate methamphetamine trafficking network. The complaint alleged that Sanchez-Sanchez had a leadership role in “La Familia Michoacana,” a Mexican drug cartel that was distributing methamphetamine. Specifically, the State maintained that Sanchez-Sanchez conspired with about 21 other people to sell approximately 17 pounds of methamphetamine.
The complaint detailed Sanchez-Sanchez’s involvement in the conspiracy from May 2010 until March 7, 2012. Sanchez-Sanchez, whose primary residence was in California, rented a house in Brooklyn Park, Minnesota that was used as a “stash house” to store and distribute methamphetamine in Minnesota. Sanchez-Sanchez sometimes stayed at the house and co-directed the methamphetamine distribution. The complaint also documented a series of calls between Sanchez-Sanchez and a co-conspirator that showed that Sanchez-Sanchez arranged and directed the co-conspirator’s pickup of 9.6 pounds of methamphetamine in California for transport to Minnesota.
The State notified Sanchez-Sanchez that it intended to seek an upward durational sentencing departure based on the pres *327 ence of three aggravating factors: (1) the offense constituted a “major controlled substance offense,” Minn. Sent. Guidelines 2:D.3.b(5); (2) Sanchez-Sanchez committed the crime as part of a group of three or more people who all actively participated in the crime, Minn. Sent. Guidelines 2.D.3.b(10); and (3) Sanchez-Sanchez’s conduct placed a number of people at risk.
The State offered Sanchez-Sanchez- a 172-month sentence in exchange for his guilty plea to the charged offense. Sanchez-Sanchez rejected the offer. Instead, in July 2013, Sanchez-Sanchez entered a straight plea to the charge of conspiracy to commit a first-degree controlled substance crime, meaning he pleaded guilty to the offense but did not enter into any agreement regarding sentencing. See State v. Thompson, 720 N.W.2d 820, 823 (Minn. 2006).
At the plea hearing, Sanchez-Sanchez waived his right under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to have a jury determine whether aggravating factors existed to justify an upward durational departure in his sentence. Sanchez-Sanchez understood that he was still entitled to a Blakely court trial before a judge to determine whether the alleged aggravating factors existed.
Without objection, the district court did not apply the Minnesota Rules of Evidence during Sanchez-Sanchez’s Blakely court trial, which allowed the State to present its entire case through a single witness: FBI Special Agent Andrew Mento. Agent Mento was one of the case agents involved in the investigation that resulted in charges against Sanchez-Sanchez and 21 other defendants. During his testimony, Agent Mentó recounted how the FBI investigation led to Sanchez-Sanchez. Using wiretaps, the FBI was able to intercept telephone calls between Sanchez-Sanchez and Daniel Samorano, a co-conspirator. The calls were placed while Samorano was in California to pick up drugs to bring back to Minnesota. Agent Mentó testified about the calls in detail and explained how they showed that Sanchez-Sanchez orchestrated Samorano’s acquisition of a car that was used to transport drugs and cash in a hidden trunk compartment.
According to Agent Mentó, law enforcement stopped Samorano, in Medford, Minnesota. and found approximately 10 pounds of methamphetamine packed in coffee grounds in a hidden compartment in the car that he was driving. Agent Mentó testified that, based on what an expert told him, the sophistication of the hidden compartment was consistent- with “a large-scale Mexican drug trafficking organization” — “La Familia Michoacana.” Agent Mentó estimated that the methamphetamine had a street value of $300,000.
Agent Mentó additionally testified to statements made by lower-level, cooperating co-conspirators, which were received without objection. In those statements, co-conspirators identified Sanchez-Sanchez as having a role at the highest levels of the conspiracy. Agent Mentó then explained how other evidence, including drug ledgers and bank notes found at the Brooklyn Park home that Sanchez-Sanchez leased, also linked Sanchez-Sanchez to the conspiracy. According to Agent Mentó, the total amount of metharaphet-amine recovered in connection with the investigation was about 16 pounds, which was the equivalent of 36,000 “hits”[1] of methamphetamine.
*328 At the end of the trial, the district court concluded that -the State had proved beyond a reasonable doubt all three of the aggravating sentencing factors. Based on its findings, the district court imposed a 240-month sentence — a greater-than-double upward durational departure from the presumptive sentencing range of 74 to 103 months. See Minn. Sent. Guidelines 4.A (showing the sentencing-guidelines grid used to determine a defendant’s presumptive sentencing range).
On appeal, Sanchez-Sanchez argued, ámong other claims, that the district court committed plain error when it failed to apply the rules of evidence during the Blakely court trial, allowing the admission of “hearsay provided by anonymous informants and other arrestees, and related by FBI [A]gent Mento.” According to Sanchez-Sanchez, Agent Mento’s testimony regarding the out-of-court statements of the cooperating co-conspirators was inadmissible under Minn. R. Evid. 801(d)(2)(E) (explaining the showing required to admit statements made by a co-conspirator in furtherance of the conspiracy as non-hearsay). ' Sanchez-Sanchez therefore claimed that; “virtually all of Agent' Mento’s testimony should have been inadmissible at the sentencing hearing,” and the district court plainly erred by relying on it.
 The court of appeals held that the district court did not err by admitting the hearsay testimony. State v. Sanchez-Sanchez, No. A14-0584, 2015 WL 1880196, at *2 (Minn.App. Apr. 27, 2015). In so holding, the court of appeals stated that “[t]he rules of evidence do not apply at a sentencing proceeding without a jury.” Id. Citing to our decision in State v. Rodriguez, 754 N.W.2d 672 (Minn.2008), the court concluded that the rules of evidence apply only to a Blakely jury trial. Sanchez-Sanchez, however,.-had waived- his right to a jury determination, and therefore the court concluded that Rodriguez was inapplicable. Sanchez-Sanchez, 2015 WL 1880196, at *2 n. 1. Having concluded that there was no error, the court of appeals did not consider the remaining prongs of the plain-error test.[2] We granted review on the issue of whether the rules of evidence apply to a Blakely court trial.[3]
II.
Minnesota Rule of Evidence 1101 governs the application of the rules of evidence to actions and proceedings in Minnesota. The Rule reads, in relevant part;
(a) Except as otherwise provided in subdivision (b), these rules apply to all actions and proceedings in the courts of this state.
*329 (b) Rules inapplicable. The rules other than those with respect to privileges do not apply in the following situations:
[[Image here]]
(3) Miscellaneous proceedings. Proceedings for extradition or rendition; probable cause hearings; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release oh bail or otherwise.
Minn. R. Evid. 1101 (emphasis added). The question, therefore, is whether a Blakely court trial qualifies as “sentencing” under Minn. R. Evid. 1101(b)(3). We review the interpretation and application of the rules of evidence de novo. See State v. Stone, 784 N.W.2d 367, 370 (Minn.2010) (reviewing de novo whether the district court properly interpreted Minn. R. Evid. 803(5)); see also State v. Heaney, 689 N.W.2d 168, 171 (Minn.2004) (“The construction of statutes and rules is subject to de novo review.”).
In State v. Rodriguez, 754 N.W.2d 672 (Minn.2008), we considered the plain meaning of “proceeding” in Minn. R. Evid. 1101(b)(3). There, among other questions, we examined whether the district court erred in refusing to apply the rules of evidence at Rodriguez’s “jury sentencing trial.” Rodriguez, 754 N.W.2d at 683. The phrase '“jury sentencing trial” referred to a defendant’s right to have a jury determine whether aggravating factors exist to support an upward sentencing departure, as required by Blakely, 542 U.S. at 301, 124 S.Ct. 2531. See Rodriguez, 754 N.W.2d .at 676-77; see also id. at 684 n. 8.
In Rodriguez, we held that the Minnesota Rules of Evidence apply in “jury sentencing trials.” Id. at 683-84. Our analysis hinged on the plain language of the rule: “Under the plain language of Minn. R. Evid. 1101(a), the rules of evidence apply in jury sentencing trials, which are not listed as an exception in Minn. R. Evid. 1101(b).” Id. at 683. We therefore drew a distinction between a '“sentencing,” as contemplated when Minn. R. Evid.. 1101 was adopted in 1977, and.a “jury sentencing trial,” which developed from Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and. Blakely. Rodriguez, 754 N.W.2d at 684 n. 8.
Here, the court of appeals determined that “[t]he rules of evidence do- not apply at a sentencing proceeding without a jury.” Sanchez-Sanehez, 2015 WL 1880196, at *2. In reaching this conclusion, the court of appeals relied on both Minn.' R. Evid. 1101(b)(3) and our decision in Rodriguez. The court of appeals reasoned that Rodriguez limited the application of the Minnesota Rules of Evidence to Blakely jury trials. Sanchez-Sanchez, 2015 WL 1880196, at *2 n. 1. Accordingly, because Sanchez-Sanchez waived his right to a jury determination and instead elected to have a Blakely court trial, the court of appeals held that the rules of evidence did not apply. Id.
Although we did not explicitly state that the Minnesota Rules of Evidence applied to Blakely court trials in Rodriguez, our decision should not be read as intentionally cabining the application of the rules of evidence to only Blakely jury trials. As we recognized in Rodriguez and as Sanchez-Sanchez argues here, there is a substantive difference between an ordinary sentencing hearing following a trial or a guilty plea and a sentencing trial where adjudicatory facts are determined. See Rodriguez, 754 N.W.2d at .684 n. 8. At the time of its adoption, Rule 1101 equated “sentencing” with a sentencing hearing. See id.- At a sentencing hearing, counsel for each party tries to, persuade the district court why a particular sentence is appropriate. See Presentencing Hearing,
*330 Black’s Law Dictionary (10th ed.2014) (describing a sentencing hearing as a proceeding at which a judge “receives and examines all relevant information regarding a convicted criminal and the related offense before passing sentence”). In contrast, a Blakely trial considers whether aggravating sentencing factors exist. Any aggravating factors must be proven beyond a reasonable doubt. Blakely, 542 U.S. at 301, 124 S.CT. 2531. In this respect, a Blakely trial is functionally the same as a criminal defendant’s trial during the adjudication-of-guilt phase. A criminal defendant has the right to a trial by jury or by the court, Minn. R.Crim. P. 26.01, subd. 1(2)(b), and when a defendant waives that right to a trial by jury, the rules of evidence nonetheless apply to the bench trial.
The same reasoning that we relied on in Rodriguez applies here. Sentencing, as used in Minn. R. Evid. 1101(b)(3), excludes Blakely jury trials and Blakely court trials. Therefore, under Minn. R. Evid. 1101(a), the Minnesota Rules of Evidence apply to all Blakely trials, whether before a judge or a jury.
The State argues that this interpretation of Rule 1101(b)(3) is absurd because it renders the word “sentencing” superfluous. We disagree. The word “sentencing” is not superfluous because it still refers to the proceeding at which a judge listens to the parties’ sentencing arguments; considers all the relevant facts, including the special verdicts returned at an earlier Blakely trial; and then announces the sentence.
In sum, regardless of whether a judge or a jury serves as the trier of fact at a sentencing trial to determine whether aggravated sentencing factors exist, the term “sentencing” as used in Minn. R. Evid. 1101 does not include such a trial, whether it is conducted before a judge or jury. We therefore hold that the Minnesota Rules of Evidence apply to a Blakely court trial.
III.
Having determined that the Minnesota Rules of Evidence apply to a Blakely court trial, we must next decide whether the district court’s unobjected-to failure to apply the rules of evidence during Sanchez-Sanehez’s Blakely court trial constitutes an error that is plain. A “plain” error is an error that is “clear or obvious” at the time of appeal. State v. Peltier, 874 N.W.2d 792, 799 (Minn.2016); State v, Kelley, 855 N.W.2d 269, 277 (Minn. 2014). “An error is clear or obvious if it ‘contravenes case law, a rule, or a standard of conduct.’” State v. Little, 851 N.W.2d 878, 884 (Minn.2014) (quoting State v. Ramey, 721 N.W.2d 294, 302 (Minn.2006)). If the district court did not plainly err, then we need not address whether appellant’s substantial rights were affected. See State v. Martinez, 725 N.W.2d 733, 738 (Minn. 2007). Therefore, to prevail, Sanchez-Sanchez must show that it was “clear or obvious” that the Minnesota Rules of Evidence apply to Blakely court trials.
Sanchez-Sanchez argues that the error was plain because Rodriguez made it clear and obvious that the “sentencing” exemption in Minn. R. Evid. 1101(b)(3) does not apply to Blakely sentencing trials. We disagree.
Rodriguez held that the Minnesota Rules of Evidence apply to “sentencing jury trials” and made no mention of sentencing court trials. Because we did not explicitly reference sentencing court trials, lower courts read our opinion as narrowly applying the rules of evidence to only Blakely jury trials, not Blakely court trials. Although the lower courts’ narrow interpretation of Rodriguez was ultimately incorrect, it was not clearly or obviously *331 wrong. Consequently, we are faced with a situation that is similar to State v. Milton, 821 N.W.2d 789 (Minn.2012).
In Milton, we considered the district court’s unobjected-to failure to fully instruct the jury on the issue of aiding and abetting. 821 N.W.2d at 806-07. We acknowledged that we had “never before specifically required district courts to explain to juries that a defendant intentionally aids another person if the defendant knowingly and intentionally assists in the commission of the underlying crime.” Id. at 807. Nevertheless, we concluded that our reasoning in an earlier case, State v. Mahkuk, 736 N.W.2d 675, 682-83 (Minn. 2007), required such an instruction. Milton, 821 N.W.2d at 807. Because we had “not yet clearly required district courts to include a specific explanation of the ‘intentionally aiding’ element ,, we concluded that the court’s instructions- did not constitute ‘clear’ or ‘obvious’ error, and thus the court’s error [was] not plain.” Id.
Our reasoning in Milton applies with equal' force here. Until today, we had never clearly required district courts to apply the rales of evidence in a Blakely court trial. Consequently, we cannot say that the district court’s unobjected-to failure to apply the rules of evidence in this case constitutes a clear or obvious error. We therefore conclude that, although the district court erred, the error was not plain.[4]
In sum, we hold that the lower courts erred when they concluded that the - Minnesota Rules of Evidence did not apply to Sanchez-Sanchez’s Blakely court trial. However, because there was no objection and the error was not plain, we affirm the court of appeals’ decision as modified by this opinion.
Affirmed as modified.'
GHUTICH, J., not' having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

. Agent Mento’s testimony suggested that a "hit” is equivalent to about 0.2 grams, of methamphetamine, which is the amount he expected a typical user to purchase for his or her use.

. "Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error must affect [the appellant's] substantial rights.” State v. Kelley, 855 N.W.2d 269, 273-74 (Minn.2014). "If the appellant satisfies the first three prongs of the plain-error doctrine, we may correct the error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.” Id. at 274 (citations omitted) (internal quotation marks omitted).

. To the extent Sanchez-Sanchez argues that the district court’s admission of the hearsay-based testimony violates the Confrontation Clause, that argument is not properly before us. Sanchez-Sanchez did not raise that issue in his petition for review, and we granted review only as to the issue of whether the rules of evidence apply to Blakely court trials. See State v. Garcia-Gutierrez, 844 N.W.2d 519, 522 n. 4 (Minn.2014) (declining to address an issue because it was not raised in the State’s petition for review); see also In re GlaxoS-mithKline PLC, 699 N.W.2d 749, 757 (Minn. 2005) (explaining that we generally do not address issues that were not raised in a petition for review). Therefore, this argument is forfeited.

. Having concluded that the error was not • plain, we need not consider the remaining prongs of the plain-error test.