**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0275**

State of Minnesota,
Respondent,

vs.

Berry Alan Willis,
Appellant.

**Filed August 15, 2016**
**Affirmed in part, reversed in part, and remanded**
**Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-14-6683

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth A. Scoggin, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

**S Y L L A B U S**

The Minnesota Rules of Evidence do not apply to restitution hearings.

**O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges the restitution award in this aggravated forgery case, arguing that the district court erred by (1) considering hearsay evidence of the victim's economic

loss and (2) ordering restitution for expenses the victim incurred prior to appellant's charged conduct. Because the rules of evidence do not apply to restitution hearings but restitution awards must reflect loss directly caused by the offense, we affirm in part, reverse in part, and remand.

## FACTS

On October 28, 2013, appellant Berry Alan Willis filed a quitclaim deed in the name of P.H. to transfer residential property he previously lost in foreclosure back to himself. The state charged Willis with aggravated forgery. A jury found Willis guilty, and the district court imposed a stayed sentence with probation conditions. At the sentencing hearing, the district court reserved the issue of restitution for 90 days. After the court ordered him to pay $25,400 in restitution, Willis requested a contested hearing.

At the restitution hearing, victim P.H.'s son, J.H., testified that, in addition to filing the forged quitclaim deed, Willis engaged in other behavior that damaged P.H. After restoring the property, P.H. put it on the market in August 2013. But she quickly took it off the market because Willis harassed potential buyers by entering the property, claiming to be the rightful owner, and threatening to call the police. The property was eventually relisted in September 2013 and ultimately sold in February 2014.

J.H. also testified about various costs P.H. incurred in relation to the property. P.H. borrowed $100,000 to buy the property in March 2013, and had monthly expenses, including loan payments, taxes, utilities, and insurance, totaling $1,457. Over Willis's objection, J.H. produced a letter from P.H.'s lawyer stating that P.H. incurred $2,000 in attorney fees to cure the title defect caused by the forged deed. The district court ordered

2

Willis to pay P.H. $10,742 in restitution. This amount includes $2,000 for P.H.'s attorney fees, and $8,742 representing P.H.'s monthly payments from August 2013 to February 2014. Willis appeals.

## ISSUES

I.    Did the district court err by considering hearsay evidence at the restitution hearing?

II.    Did the district court err by ordering restitution for loss P.H. incurred before Willis committed the forgery?

## ANALYSIS

**I.    The Minnesota Rules of Evidence do not apply to restitution hearings.**

Minnesota Rule of Evidence 1101 provides that the rules of evidence generally apply to all Minnesota court proceedings. But rule 1101 states that the rules (other than those involving privilege) do not apply to:

> Proceedings for extradition or rendition; probable cause hearings; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

Minn. R. Evid. 1101(b)(3). Our analysis turns on whether a restitution hearing constitutes "sentencing" under Minn. R. Evid. 1101(b)(3). We review the interpretation of the rules of evidence de novo. *State v. McCurry*, 770 N.W.2d 553, 559 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009).

Willis correctly asserts that rule 1101(b)(3) does not expressly exempt restitution hearings from the rules of evidence. But that does not end our inquiry. Our legislature established restitution as part of a defendant's sentence. "A victim of a crime has the

right to receive restitution as part of the disposition of a criminal charge . . . against the offender if the offender is convicted." Minn. Stat. § 611A.04, subd. 1(a) (2012). And Minn. Stat. § 609.10, subd. 1(a)(5) (2012), provides that court-ordered restitution is a sentence that may be imposed upon conviction of a felony. Minnesota courts have consistently interpreted these statutes to mean that restitution is part of a criminal sentence. *See Evans v. State*, 880 N.W.2d 357, 359 (Minn. 2016); *see also State v. Gaiovnik*, 794 N.W.2d 643, 648 (Minn. 2011). Because the obligation to pay restitution is a part of a sentence, and the rules of evidence do not apply to sentencing proceedings, it follows that the evidentiary rules do not apply to restitution hearings.

This conclusion is consistent with persuasive authority from the federal courts. The corresponding Federal Rule of Evidence provides that the rules (except for those on privilege) do not apply to "miscellaneous proceedings such as . . . sentencing." Fed. R. Evid. 1101(d). Because the text of the federal rule is similar to our own, we may look to federal caselaw for guidance in construing the Minnesota rule. *State v. Head*, 561 N.W.2d 182, 186 (Minn. App. 1997), *review denied* (Minn. May 28, 1997).

Federal courts have interpreted Fed. R. Evid. 1101(d) to mean that the rules of evidence do not apply to restitution hearings. *See*, *e.g.*, *United States v. Ogden*, 685 F.3d 600, 606 (6th Cir. 2012) (holding that disputes as to evidence admitted at a restitution hearing are meritless because the rules of evidence do not apply during sentencing proceedings); *United States v. Yeung*, 672 F.3d 594, 606 (9th Cir. 2012) (holding that because the rules of evidence, including the rule against hearsay, do not apply to sentencing hearings, the district court did not err in relying on hearsay in ordering

4

restitution), *abrogated on other grounds by Robers v. United States*, 134 S. Ct. 1854, 1857-59 (2014).

This analysis also comports with the caselaw of other states. *See, e.g.*, *People v. Matzke*, 842 N.W.2d 557, 559-60 (Mich. Ct. App. 2013) (holding that because restitution hearings are a part of sentencing and have nothing to do with a defendant's guilt or innocence, the rules of evidence do not apply); *State v. Ruttman*, 598 N.W.2d 910, 911 (S.D. 1999) ("Restitution is similar to other criminal sanctions and requires no greater procedural protections than those normally employed in sentencing.").

Willis likens restitution hearings to *Blakely* trials. We are not persuaded. In holding that the rules of evidence apply to *Blakely* trials, our supreme court distinguished a "sentencing" as contemplated when rule 1101 was adopted in 1977, and a "jury sentencing trial," which flowed from *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). *State v. Rodriguez*, 754 N.W.2d 672, 684 n.8 (Minn. 2008). In contrast, restitution was an aspect of sentencing prior to the adoption of rule 1101. In 1977, the same year our supreme court adopted rule 1101, the legislature amended Minn. Stat. § 609.135, subd. 1 to explicitly permit district courts to order restitution as a condition of probation. Minn. Stat. § 609.135, subd. 1 (Supp. 1977). But district courts had been doing so for years. *See State v. Glewwe*, 307 Minn. 513, 515, 239 N.W.2d 479, 480 (1976) (noting that restitution was ordered as a condition of probation in a theft case, but was improper because the stolen items had been returned); *State ex rel. Ahern v. Young*, 273 Minn. 240, 241, 141 N.W.2d 15, 16 (1966) (listing restitution as a condition of probation imposed

following a forgery conviction); *see also* Minn. Stat. § 609.135 (1976) (stating that a court may stay execution of sentence and place an individual on probation "on such terms as the court may prescribe"). Thus, unlike *Blakely* trials, the obligation to pay restitution was understood to be part of a criminal sentence at the time rule 1101 was adopted. Moreover, our supreme court recently observed that *Blakely* trials—whether decided by a jury or court—are functionally equivalent to the adjudication-of-guilt phase of a defendant's criminal trial. *State v. Sanchez-Sanchez*, 879 N.W.2d 324, 330 (Minn. 2016). The supreme court reasoned that "there is a substantive difference between an ordinary sentencing hearing following a trial or a guilty plea and a sentencing trial where adjudicatory facts are determined." *Id*. at 329. Indeed, the special verdicts reached in a *Blakely* trial are among the factors a district court considers in determining a defendant's sentence. *Id.* at 330. In contrast, restitution hearings do not determine a defendant's guilt or innocence. Rather, they determine the extent to which a victim should be compensated for loss incurred as a result of the criminal conduct for which a defendant has been found guilty beyond a reasonable doubt. *See State v. Fader*, 358 N.W.2d 42, 48 (Minn. 1984) ("In our opinion, the word 'restitution' connotes restoring or compensating the victim for his loss.").

In sum, because the rules of evidence do not apply to restitution hearings, the district court did not err by considering hearsay evidence of the legal fees P.H. incurred as a result of Willis's offense.

**II.    The district court abused its discretion by awarding restitution for damages that were not caused by the charged offense.**

District courts have broad discretion in awarding restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). "But determining whether an item meets the statutory requirements for restitution is a question of law that is fully reviewable by the appellate court." *State v. Nelson*, 796 N.W.2d 343, 346-47 (Minn. App. 2011) (quotation omitted).

A victim may request restitution if the defendant is convicted of a crime. Minn. Stat. § 611A.04, subd. 1(a). When considering restitution requests, courts look at, among other factors, "the amount of economic loss sustained by the victim as a result of the offense." Minn. Stat. § 611A.045, subd. 1(a)(1) (2012). This court has interpreted the statute to require that the claimed loss be "directly caused by the conduct for which the defendant was convicted." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999) (quotation omitted); *see also State v. Olson*, 381 N.W.2d 899, 901 (Minn. App. 1986) (holding that restitution is proper for "victim's losses [that] are directly caused by appellant's conduct for which he was convicted").

Willis does not dispute that P.H. should recover her monthly expenses between the time of the forgery and the sale of the home (November 2013 to February 2014). But he contends that the district court erred by holding him responsible for expenses P.H. incurred during the months prior to his offense. This argument has merit. In *Nelson*, we held that a district court errs when it does not "differentiate between losses resulting from

appellant's conduct that occurred before and those that occurred during the charging period in setting the amount of restitution." 796 N.W.2d at 348.

The state contends that *Nelson* does not set out a clear rule preventing victims from receiving restitution for expenses incurred prior to the offense. And the state urges the court to affirm restitution for monthly expenses dating back to Willis's earlier harassment because his desired ends—reclaiming property he believed to be his—were consistent with those of his charged offense. We are not persuaded. Willis was charged with committing aggravated forgery on October 28, 2013. The charge was based on conduct entirely separate from Willis's uncharged harassing behavior. *See* Minn. Stat. § 609.625, subd. 3 (2012) ("Whoever, with intent to defraud, utters or possesses with intent to utter any forged writing or object mentioned in subdivision 1 . . . knowing it to have been so forged, may be sentenced as provided in subdivision 1."). Accordingly, any loss P.H. sustained prior to Willis's forged deed cannot be said to have been directly caused by the charged offense. Because Willis is not responsible for economic loss P.H. sustained prior to the date of the forgery, we reverse and remand for the district court to reduce the restitution award accordingly.

## D E C I S I O N

Because the Minnesota Rules of Evidence do not apply to restitution hearings, the district court did not err in considering hearsay evidence of P.H.'s economic loss. But the district court erred by awarding restitution for costs incurred prior to Willis's charged conduct. Accordingly, we affirm in part, reverse in part, and remand.

**Affirmed in part, reversed in part, and remanded.**