### STATE of Minnesota, Respondent,

### v.

### Berry Alan WILLIS, Appellant.

### A16-0275

Supreme Court of Minnesota.

Filed: July 12, 2017

---

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Elizabeth A. Scoggin, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

OPINION

GILDEA, Chief Justice.

In this case we are asked to decide whether the Minnesota Rules of Evidence apply to restitution hearings held under Minn. Stat. § 611A.045, subd. 3(b) (2016).[1] The district court overruled objections to documents the State offered during the restitution hearing, concluding that the Rules of Evidence did not apply. The court

---

1. In this opinion, we use the phrase "restitution hearing" to refer to a hearing held to resolve factual disputes regarding the proper amount or type of restitution to award. Minn. Stat. § 611A.045, subd. 3(b) ("An offender may challenge restitution, but must do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of the sentencing, whichever is later.").

of appeals affirmed in relevant part, con,cluding that because restitution is part of a defendant's sentence and Minn. R. Evid. 1101 exempts sentencing from the Rules of Evidence, the rules do not apply to restitution hearings. Because we conclude that Minn. R. Evid. 1101 requires application of the Minnesota Rules of Evidence to restitution hearings, we reverse.

## FACTS

The crime at issue here occurred after a bank foreclosed on property that appellant Berry Alan Willis owned. The bank sold the foreclosed property to P.H., who made several improvements to the property with the help of her adult son, J.H. After the sale to P.H., Willis filed a forged quitclaim deed that purported to transfer the foreclosed property from P.H. back to Willis. When P.H. and J.H. later attempted to sell the foreclosed property, Willis's forged quitclaim deed and continual harassment of potential buyers interfered with those efforts. Based on the forged quitclaim deed, the State charged Willis with aggravated forgery, Minn. Stat. § 609.625, subd. 3 (2016). Willis pleaded not guilty and, after a jury trial, the jury found Willis guilty of aggravated forgery.

At Willis's February 2015 sentencing, the district court imposed a presumptive guideline sentence. The court also told Willis that it was "reserv[ing] restitution for 90 days to allow the State and the victims to come forward with a claim or claims and then [Willis] would have that right to challenge it through the restitution process set forth by statute."[2]

The State made a restitution request and in April 2015, the district court filed

Restitution Findings and a Restitution Order. In that order, the court ordered Willis to pay $25,400 to P.H. and J.H. Willis requested a restitution hearing.

At the restitution hearing, the State presented a letter from P.H.'s attorney describing the $2,000 in legal fees P.H. incurred to clear the title to the foreclosed property. The district court asked if Willis had any objections to the letter, and Willis replied, "Yes, I would object to this exhibit here." The court overruled Willis's objection and admitted the letter. Later in the hearing, the State offered a group of e-mails exchanged between J.H. and several real estate agents that described how Willis had interfered with the agents' efforts to show the foreclosed property to prospective buyers. Willis objected to the admissibility of the e-mails on hearsay grounds. When the court asked the State to respond to Willis's objection, the State replied, "the Rules of Evidence ... don't strictly apply ... to a restitution hearing and [J.H.] is qualified to explain the document." The court responded, "Okay. On that basis I'll overrule the objection." Willis made similar objections to five additional exhibits during the restitution hearing, all of which were admitted over his objections.

About 3 weeks after the restitution hearing, the district court filed a written order requiring Willis to pay P.H. restitution in the amount of $10,742, including the $2,000 in legal fees outlined in the letter from P.H.'s attorney.[3] The order contained findings of fact that were based on the evidence presented at the restitution hearing, including the evidence to which Willis

---

2. Minnesota Statutes § 611A.04, subd. 1(a) (2016), allows a district court to reserve the issue of restitution if the victim's affidavit or other competent evidence submitted by the victim is not received in time.

3. Although the State initially requested $25,400 in restitution, it lowered its request to $10,742 following the restitution hearing.

objected. Willis appealed the restitution order.

On appeal, Willis challenged the district court's evidentiary rulings, arguing that the district court erred in failing to apply the Minnesota Rules of Evidence at the restitution hearing. The court of appeals affirmed the district court's evidentiary rulings. The court of appeals concluded that "the obligation to pay restitution is a part of a sentence," and because the Rules of Evidence do not apply to sentencing proceedings, "it follows that the evidentiary rules do not apply to restitution hearings." *State v. Willis*, 883 N.W.2d 838, 840 (Minn.App. 2016). We granted Willis's petition for review.

## ANALYSIS

The Minnesota Rules of Evidence "apply to all actions and proceedings in the courts of this state," except for those proceedings described in Minn. R. Evid. 1101(b). Minn. R. Evid. 1101(a). The specific part of paragraph (b) at issue in this case is clause 3, titled "Miscellaneous proceedings." Under clause 3, the Rules of Evidence do not apply to:

> Proceedings for extradition or rendition; probable cause hearings; *sentencing*, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

Minn. R. Evid. 1101(b)(3) (emphasis added).

The court of appeals concluded, and the State argues, that restitution hearings are part of "sentencing" for purposes of Minn. R. Evid. 1101(b)(3). Willis disagrees. The parties' competing arguments on the meaning of the word "sentencing" in Rule 1101(b)(3) present a question of law subject to de novo review. *See State v. Stone*, 784 N.W.2d 367, 370 (Minn. 2010).

When interpreting the Rules of Evidence, we first look at the plain language of the rule. *Id.* Words and phrases are construed according to the rules of grammar and their common and approved usage. *State v. Dahlin*, 753 N.W.2d 300, 306 (Minn. 2008). If the plain language of a rule is unambiguous, we must apply it. *State v. Davis*, 864 N.W.2d 171, 182 (Minn. 2015). But "if the rule ... [is] 'subject to more than one reasonable interpretation,' will we look beyond the plain language of the rule." *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 571-72 (Minn. 2017) (quoting *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014)).

According to the State, we should interpret the word "sentencing," as used in Rule 1101(b)(3), to include restitution hearings because a defendant's restitution obligation is part of the sentence. Willis contends that such an interpretation is unreasonable for two reasons. First, Willis notes that we recently interpreted the word "sentencing" to mean "the proceeding at which a judge listens to the parties' sentencing arguments; considers all the relevant facts, including the special verdicts returned at an earlier *Blakely* trial; and then announces the sentence." *State v. Sanchez-Sanchez*, 879 N.W.2d 324, 330 (Minn. 2016) (concluding that the word "sentencing" as used in Minn. R. Evid. 1101(b)(3) does not include a *Blakely* court trial). Willis contends that what happens at a restitution hearing does not constitute sentencing as we interpreted that term in *Sanchez-Sanchez*. Second, Willis argues, the State's interpretation fails to acknowledge an important distinction between *the act* of imposing a restitution obligation as part of a sentence and *the hearing* under Minn. Stat. § 611A.045, subd. 3(b), to resolve factual disputes regarding the proper amount or type of restitution. According to Willis, the fact that the imposition of a restitution obligation occurs at sentencing is irrelevant to the issue of whether the

restitution hearing under section 611A.045, subdivision 3(b), is one of the "[m]iscellaneous proceedings" to which the Rules of Evidence do not apply under Minn. R. Evid. 1101(b)(3). Willis contends that the issue turns on whether restitution hearings are listed in Rule 1101(b)(3). Because the plain language of Minn. R. Evid 1101(b)(3) makes no reference to restitution hearings, Willis argues the only reasonable interpretation of the rule is that a restitution hearing is not a miscellaneous proceeding.

We agree with Willis that under Minn. R. Evid. 1101, as we have interpreted it, the Rules of Evidence apply to restitution hearings. The only basis to exclude restitution hearings would be if they were one of the "[m]iscellaneous proceedings" listed in Minn. R. Evid. 1101(b)(3). But that rule makes no reference to restitution hearings. We have interpreted similar silence to mean that the Rules of Evidence apply to any unlisted proceedings. *See Sanchez-Sanchez*, 879 N.W.2d at 329-30 (holding that the Rules of Evidence apply during a *Blakely* court trial because such proceed-

ings are not mentioned in Rule 1101(b)(3)); *State v. Rodriguez*, 754 N.W.2d 672, 683-84 (Minn. 2008) (holding that because Minn. R. Evid. 1101(b)(3) does not reference jury sentencing trials, the Rules of Evidence apply to those proceedings). We reach the same conclusion here. Because restitution hearings are not expressly excluded under Minn. R. Evid. 1101(b)(3), the plain language of Rule 1101 dictates that the Rules of Evidence apply in those proceedings.[4]

■ In urging us to reach the opposite conclusion, the State and the dissent rest on the premise that restitution is part of a defendant's criminal sentence. We do not disagree that restitution is part of a defendant's sentence.[5] Our precedent, however, tells us that this superficial conclusion does not answer the question of whether the Rules of Evidence apply to restitution hearings under section 611A.045, subdivision 3(b), which resolve factual disputes regarding the proper amount or type of restitution.[6]

■ In *Sanchez-Sanchez*, the question was whether the Rules of Evidence applied

---

4. The State and the dissent note that federal courts and other states have reached a different conclusion. We look outside Minnesota "when our own jurisprudence is undefined." *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 629 (Minn. 2007). Based on *Rodriguez* and *Sanchez-Sanchez*, our jurisprudence is not undefined, and so we have no reason to look beyond our borders. Moreover, several of the cases to which the dissent cites apply rules containing different language than our Rule of Evidence 1101(b). *See* 18 U.S.C. § 3664(c) (2012) (excluding the application of the Rules of Evidence to federal restitution proceedings); *Ex parte Stutts*, 897 So.2d 431, 434 (Ala. 2004) (relying on Alabama Rule of Criminal Procedure 26.6(b)(2), which states that "[a]ny evidence that the court deems to have probative value may be received, regardless of its admissibility under the rules of evidence").

5. We also agree that the *concept* of restitution was recognized before Rule 1101 was promulgated in 1977. *See State ex rel. Ahern v. Young*,

273 Minn. 240, 141 N.W.2d 15, 16 (Minn. 1966) (recognizing that a sentencing order required a defendant to pay restitution). In 1977, however, a defendant did not have a statutory right to a hearing to resolve factual disputes regarding the proper amount or type of restitution. The Legislature did not create such a right until 1994. Act of May 10, 1994, ch. 636, art. 7, § 4, 1994 Minn. Laws 2170, 2298-99. It is, therefore, unlikely that the drafters of the Rules of Evidence intended the term "sentencing" to encompass the then-nonexistent proceeding now authorized by Minn. Stat. § 611A.045, subd. 3(b).

6. The State and the dissent rely on *State v. Borg*, 834 N.W.2d 194 (Minn. 2013), in arguing that restitution is part of a defendant's sentence and therefore that the restitution hearing must be "sentencing." In *Borg*, we addressed the timeliness of the State's appeal from a court order amending the restitution portion of a criminal defendant's sentence. *Id.*

to a *Blakely* court trial. 879 N.W.2d at 326. The aggravating factors found to exist during a *Blakely* trial are obviously an integral part of a defendant's sentence because they directly impact the sentence duration. *See Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Indeed, our cases even call such trials "sentencing trials." *Sanchez-Sanchez*, 879 N.W.2d at 330; *Rodriguez*, 754 N.W.2d at 683 (describing the proceeding as a "sentencing trial"). We nevertheless held in both *Sanchez-Sanchez* and *Rodriguez* that *Blakely* trials were not "sentencing" under Minn. R. Evid. 1101(b)(3), which we defined as "the proceeding at which a judge listens to the parties' sentencing arguments; considers all the relevant facts, including the special verdicts returned at an earlier *Blakely* trial; and then announces the sentence." *Sanchez-*

*Sanchez*, 879 N.W.2d at 330; *see also Rodriguez*, 754 N.W.2d at 683-84. This definition finds support from common definitions of the term "sentencing." *See Merriam Webster's Collegiate Dictionary* 1064 (10th ed. 2001) (defining "sentencing" to mean "to impose a sentence on"); *The American Heritage Dictionary of the English Language* 1644 (3d ed. 1996) (defining "sentencing" to mean "[t]he act of pronouncing a judicial sentence on a defendant"). As we recognized in *Sanchez-Sanchez*, the imposition of a sentence is distinct from the process in which a factfinder makes factual determinations that may be used to support that sentence. 879 N.W.2d at 329-30. Our prior interpretation of "sentencing" as used in Minn. R. Evid. 1101(b)(3) is binding on us here.[7]

The restitution hearing at issue here is not a sentencing as we defined that term

---

at 195. Borg was convicted of third-degree criminal sexual conduct, sentenced to 48 months in prison, and ordered to pay restitution. *Id.* The court later granted Borg's request for a hearing under Minn. Stat. § 611A.045, subd. 3(b), to challenge his restitution obligation. 834 N.W.2d at 196. More than 90 days after imposing the initial sentence, the court "issued an order amending the restitution portion of Borg's sentence," and the State appealed. *Id.* The Rule of Criminal Procedure in that case allowed the State to appeal from "any sentence imposed" as long as the State did so within 90 days. *Id.* at 198. The timeliness of the State's appeal was dependent upon whether this 90-day period began to run from the initial imposition of Borg's sentence, or from the order amending the restitution portion of his sentence. *Id.* at 195. In considering the timeliness of the State's appeal, we held that "restitution is part of a defendant's sentence," *id.* at 197, and determined that because the rule of criminal procedure governing the timing for appeals allowed the State to appeal within 90 days of "any sentence imposed," the State's appeal was timely because the order amended the restitution component of Borg's sentence, *id.* at 198 (quoting Minn. R. Crim. P. 28.04). *Borg* is not helpful to our analysis because

even if the act of imposing a restitution obligation is "part of a defendant's sentence," it does not follow that the hearing under Minn. Stat. § 611A.045, subd. 3(b), which is designed to resolve factual disputes regarding the proper amount or type of restitution, constitutes "sentencing" under Minn. R. Evid. 1101(b)(3).

7. The dissent attempts to revisit the distinction we drew in *Sanchez-Sanchez*, between fact-finding proceedings (*Blakely* trials) and proceedings at which a judge listens to the parties' sentencing arguments; considers all the relevant facts, including the special verdicts returned at an earlier *Blakely* trial; and then announces a sentence (sentencings). 879 N.W.2d at 330. According to the dissent, the word "sentencing" should instead be broadly defined as "[t]he judicial determination of the penalty for a crime." *Infra* at D-3. The dissent's argument is unavailing because it ignores the doctrine of stare decisis, which "directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process." *Walsh*, 851 N.W.2d at 604. Consistent with the doctrine of stare decisis, we apply the definition of "sentencing" adopted in *Sanchez-Sanchez* to the facts of this case.

in *Sanchez-Sanchez*. In contrast to the definition of sentencing from *Sanchez-Sanchez*, a restitution hearing involves the presentation of evidence that is relevant to a factual dispute regarding "the proper amount or type of restitution [that] must be resolved by the court by the preponderance of the evidence." Minn. Stat. § 611A.045, subd. 3(a) (2016). In this way, the restitution hearing is similar to the *Blakely* trials in *Sanchez-Sanchez* and *Rodriguez* and it is not itself a sentencing.[8]

In short, the Rules of Evidence apply to all cases and proceedings unless the rules provide otherwise. Because the language of Minn. R. Evid. 1101(b)(3) does not preclude their application to restitution hearings, the Minnesota Rules of Evidence apply to such hearings.

We acknowledge the policy arguments the parties and the dissent articulate for and against the application of the Rules of Evidence in restitution hearings. Because the language of Minn. R. Evid. 1101(b)(3) is unambiguous, we do not look beyond the language of the rule. In the past, however, we have invited the appropriate advisory committees to review an unambiguous rule. *See State v. Clark*, 738 N.W.2d 316, 339 n.10 (Minn. 2007) (inviting review by the appropriate committee(s) of Minn. R. Prof. Conduct 4.2 as it relates to government lawyers' contact with represented criminal defendants). In a separate order filed today, we have directed the Minnesota Supreme Court Advisory Committee on the Rules of Evidence and the Minnesota Supreme Court Advisory Committee on the Rules of Criminal Procedure to review the relevant rules in light of our holding today and the competing policy considerations raised by the parties, and make any necessary recommendations. Even so, the State and the dissent raise a serious concern that, in certain cases, restitution hearings could be used to harass or trau-

---

8. The dissent responds that restitution hearings are so distinct from *Blakely* trials that our analysis in *Sanchez-Sanchez* and *Rodriguez* should not bind us here. We disagree. The dissent fails to account for the similarities between *Blakely* trials and restitution hearings. In both situations, the decision-maker finds facts that a court later uses to determine a defendant's sentence. In *Blakely* trials, the facts are used to increase the length of the defendant's sentence beyond the top of the presumptive sentencing range. *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531. Although the facts found at restitution hearings are not used to increase the defendant's sentence beyond the top of the presumptive sentencing range, the facts are used to later determine a part of a defendant's sentence just like a *Blakely* trial, specifically the amount of money the defendant must pay to his or her victims. Although *Blakely* trials impact the ultimate sentence a defendant must serve, the fact-finding trial itself is not part of "sentencing." *Sanchez-Sanchez*, 879 N.W.2d at 330. Likewise, although a restitution hearing affects the ultimate amount of restitution a defendant must pay, the process for determining the amount itself is not part of "sentencing."

The dissent further postulates that the rule we apply is absurd because it may require the court to apply different rules during a single hearing. The dissent's argument fails to acknowledge that during a single court appearance, courts often hold multiple hearings. For example, it is common for a court to hold hearings under Minnesota Rules of Criminal Procedure 5 and 8 during a single court appearance. *See* Minn. R. Crim. P. 5 (titled "[P]rocedure on First Appearance"); Minn. R. Crim. P. 8 (titled "[P]rocedure on Second Appearance ..."). Obviously, if the defendant concedes the amount of restitution sought during the sentencing, the district court would not need to hold a restitution hearing to determine the amount of restitution the defendant actually owes and there would be no issue as to the applicability of the Rules of Evidence. But if the defendant challenges the restitution amount sought, the statute requires the court to conduct a restitution hearing, Minn. Stat. § 611A.045, subd. 3 (2016), and the Rules of Evidence apply to that hearing even if it is held during the same court appearance in which the imposition of a sentence length and other sanctions are announced.

matize victims. Other rules and our precedent give the district courts authority to prevent any such abuse. *See* Minn. Gen. R. Prac. 2.02 (requiring that all parties and witnesses be treated with respect); *State v. Brown*, 739 N.W.2d 716, 720 (Minn. 2007) (noting that district courts may limit cross-examination when it is harassing, prejudicial, confusing, repetitive, or only marginally relevant (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986))).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

Dissenting, McKeig, J.

## DISSENT

MCKEIG, Justice (dissenting).

The plain language of Minn. R. Evid. 1101(b) exempts "sentencing" from the scope of the Minnesota Rules of Evidence. Because "sentencing" clearly includes the determination of restitution, the Rules of Evidence do not apply to restitution hearings. Accordingly, I respectfully dissent from the majority's decision, which misinterprets Rule 1101(b) in a manner that will prove burdensome to parties, victims, and district courts.

## FACTS

Berry Alan Willis was convicted of aggravated forgery. At Willis's sentencing, the district court told Willis that it would allow the State and the victims 90 days to enter any restitution requests. The State entered its request, and the district court ordered Willis to pay restitution to the victims of his crime. Willis requested a restitution hearing under Minn. Stat. § 611A.045, subd. 3(b) (2016).

At the hearing, Willis objected to several pieces of evidence on the basis that they were inadmissible under the Rules of Evidence. The district court overruled Willis's objections, concluding that the Rules of Evidence do not apply to restitution hearings. The district court filed a revised restitution order, and Willis appealed, arguing that the court's order was based on inadmissible evidence. The court of appeals affirmed, concluding that section 611A.045 restitution hearings are part of "sentencing," and therefore, under Minn. R. Evid. 1101(b), the Rules of Evidence do not apply to such proceedings. We granted review.

## ANALYSIS

"We interpret procedural rules de novo." *In re Welfare of S.M.E.*, 725 N.W.2d 740, 742 (Minn. 2007). "When construing procedural rules, we look to the plain language of the rule and its purpose." *Id.* "Words and phrases are construed according to rules of grammar and according to their common and approved usage." *State v. Dahlin*, 753 N.W.2d 300, 306 (Minn. 2008) (citation and internal quotation marks omitted).

Rule 1101(b) exempts from the scope of the Rules of Evidence "[m]iscellaneous proceedings," including:

> Proceedings for extradition or rendition; probable cause hearings; *sentencing*, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

Minn. R. Evid. 1101(b)(3) (emphasis added). Although the rule refers to some specific "proceedings" and "hearings," it more generally exempts "sentencing" from the reach of the Rules of Evidence. *Id.*

We have never directly addressed the issue in this case: whether the word "sentencing" in Minn. R. Evid. 1101(b)(3) includes restitution hearings. But in *State v. Borg*, we concluded that the word "sentence" in Minn. R. Crim. P. 28.04 encompasses restitution. 834 N.W.2d 194, 197 (Minn. 2013). We found persuasive the fact that the Legislature has authorized courts to "*sentence* the defendant . . . to payment of court-ordered restitution." *Id.* (emphasis added) (quoting Minn. Stat. § 609.10, subd. 1(a)(5) (2016)). We also noted that we had previously considered restitution to be part of a defendant's sentence. *Id.*; *see State v. Gaiovnik*, 794 N.W.2d 643, 652 (Minn. 2011) (holding that "the district court did not err in ordering [the defendant] to pay restitution . . . *as part of his sentence*" (emphasis added)). We did not limit our holding to restitution imposed at the initial sentencing hearing, but concluded that restitution is part of a defendant's sentence even if it is determined at a separate restitution hearing. *Borg*, 834 N.W.2d at 197-98.

The majority contends that *Borg* is "not helpful to our analysis," splitting the finest of hairs between "the act of imposing" restitution and the restitution hearing authorized by section 611A.045. Instead, the majority relies on our statement in *State v. Sanchez-Sanchez* that "[t]he word 'sentencing' is not superfluous because it still refers to the proceeding at which a judge listens to the parties' sentencing arguments; considers all the relevant facts, including the special verdicts returned at an earlier *Blakely* trial; and then announces the sentence." 879 N.W.2d 324, 330 (Minn. 2016). But in holding that "sentencing"

retained meaning, we did not purport to provide the exclusive definition of it.

Although the majority contends that dictionaries support this "definition," both common and legal dictionaries define "sentencing" much more broadly than our statement in *Sanchez-Sanchez*, referring simply to the imposition of a sentence. *See Sentencing, Black's Law Dictionary* (10th ed. 2014) (defining "sentencing" as "[t]he judicial determination of the penalty for a crime"); *The American Heritage Dictionary of the English Language* 1597 (5th ed. 2011) (defining the verb form of "sentence" as "[t]o impose a sentence on"); *Webster's Third New International Dictionary* 2068 (2002) (defining the verb form of "sentence" as "to condemn to penalty or punishment" or "to pronounce [a] sentence on"). Because we have recognized that restitution is part of a defendant's sentence, a hearing to determine restitution is as much a part of the imposition of a sentence as a hearing to determine the rest of the defendant's sentence.

Further, many other jurisdictions, including the federal courts, adhere to procedural rules excluding "sentencing" from their reach. *See, e.g.,* Fed. R. Evid. 1101(d)(3) (excluding "miscellaneous proceedings" including "sentencing" from the scope of the Federal Rules of Evidence). The majority's decision departs from the *unanimous opinion* of the many state supreme courts and federal appellate courts that have determined—either explicitly or implicitly—that the exclusion of "sentencing" from the scope of their rules of evidence encompasses restitution hearings.[1]

---

1. Five federal circuit courts of appeals have concluded that the Federal Rules of Evidence do not apply to restitution hearings because they do not apply to "sentencing." *United States v. Adejumo*, 848 F.3d 868, 870-71 (8th Cir. 2017); *United States v. Gushlak*, 728 F.3d 184, 197 n.10 (2d Cir. 2013); *United States v. Yeung*, 672 F.3d 594, 606 (9th Cir. 2012), *abrogated on other grounds by Robers v. United States*, — U.S. —, 134 S.Ct. 1854, 188 L.Ed.2d 885 (2014); *United States v. Ogden*, 685 F.3d 600, 606 (6th Cir. 2012); *United*

The majority relies on our decisions in *Sanchez-Sanchez* and *Rodriguez* to conclude that "sentencing" does not encompass restitution hearings. *See Sanchez-Sanchez*, 879 N.W.2d at 324; *State v. Rodriguez*, 754 N.W.2d 672 (Minn. 2008). These cases had nothing to do with restitution, but rather required us to determine whether "sentencing" under Minn. R. Evid. 1101(b) encompasses *Blakely* and *Apprendi* sentencing trials, during which the court does not determine or impose any sentence, but must find aggravating factors beyond a reasonable doubt. *Sanchez-Sanchez*, 879 N.W.2d at 330; *Rodriguez*, 754 N.W.2d at 683; *see Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In concluding that the Rules of Evidence apply to these proceedings, we distinguished "an ordinary sentencing hearing" from "a sentencing *trial* where adjudicatory facts are determined." *Sanchez-Sanchez*, 879 N.W.2d at 329 (emphasis added). "At a sentencing hearing, counsel for each party tries to persuade the district court why a particular sentence is appropriate." *Id.* Conversely, sentencing trials are "functionally the same as a criminal defendant's trial during the adjudication-of-guilt phase," requiring the State to prove the existence of aggravating factors beyond a reasonable doubt. *Id.* at 330.[2]

The sentencing trials discussed in *Rodriguez* and *Sanchez-Sanchez* are not analogous to restitution hearings because "[r]estitution is similar to other criminal sanctions and requires no greater procedural protections than those normally employed in sentencing"); *see also Franco v. State*, 918 A.2d 1158, 1161 (Del. 2007) (holding that a defendant does not have the right to confront witnesses at a restitution hearing because the "procedural protections afforded a convicted defendant at *sentencing* are less stringent than the protections afforded a presumptively innocent defendant at a trial on the issue of guilt" (emphasis added)).

Despite the many jurisdictions that follow a similar rule excluding "sentencing" from the scope of their rules of evidence, I found no case in which a federal court of appeals or state supreme court has adopted the position the majority takes today.

---

*States v. Sunrhodes*, 831 F.2d 1537, 1544 (10th Cir. 1987).

Six state supreme courts have also interpreted substantially similar procedural rules excluding "sentencing" from the reach of their rules of evidence to encompass restitution hearings. *See Ex parte Stutts*, 897 So.2d 431, 434 (Ala. 2004) (applying to a restitution hearing a rule that allows a court to consider "[a]ny evidence that the court deems to have probative value" at a *sentencing hearing*); *State v. Aragon*, 374 Mont. 391, 321 P.3d 841, 844 (Mont. 2014) (holding that its rules of evidence do not apply to restitution hearings); *Schwab v. State*, 126 Nev. 754, 367 P.3d 817 (Nev. 2010) (same, reasoning that "restitution is a sentencing determination"); *In re James C.*, 871 A.2d 940, 943 (R.I. 2005) (same); *State v. Weeks*, 61 P.3d 1000, 1004 (Utah 2002) (same, reasoning that "a restitution hearing clearly qualifies" as a sentencing proceeding); *State v. Morse*, 197 Vt. 495, 106 A.3d 902, 906-07 (2014) (same, because "[r]estitution is part of sentencing").

And other states have determined outside of any specific rule that restitution hearings, as part of sentencing, do not require the strict application of their rules of evidence. *See State v. Gulledge*, 326 S.C. 220, 487 S.E.2d 590, 594 (1997) (reasoning that "[a] restitution hearing is part of the sentencing proceeding" to which its rules of evidence do not apply); *State v. Tuttle*, 460 N.W.2d 157, 160 (S.D. 1990) (concluding that due process did not require that its rules of evidence apply at

**2.** In *Rodriguez*, we also noted that sentencing trials were a new concept not in existence when Rule 1101 was promulgated in 1977. 754 N.W.2d at 684 n.8. Here, although the statute establishing restitution hearings was enacted after 1977, the concept of restitution was established well before that time. *See State ex rel. Ahern v. Young*, 273 Minn. 240, 141 N.W.2d 15, 16 (1966) (recognizing that a defendant could be ordered to pay restitution). Thus, the drafters of the Rules of Evidence likely intended the broad term "sentencing" to encompass the determination of restitution.

gous to restitution hearings. Unlike sentencing trials, restitution hearings are not functionally equivalent to criminal trials. Rather, they are a type of sentencing hearing during which "counsel for each party tries to persuade the district court why a particular [financial] sentence is appropriate." *Sanchez-Sanchez*, 879 N.W.2d at 329; *see* Minn. Stat. § 609.10, subd. 1(a)(5) (authorizing courts to "sentence the defendant . . . to payment of court-ordered restitution"). The court need not find adjudicative facts regarding the defendant's culpability beyond a reasonable doubt. Instead, the court "consider[s]" factors, including the victim's costs and the defendant's financial situation, to determine the appropriate monetary penalty. Minn. Stat. § 611A.045, subd. 1 (2016). The State need only prove the victim's costs by a preponderance of the evidence. *Id.*, subd. 3 (2016). "The fact that restitution may require new evidence *unnecessary for the adjudication of guilt*" is "not a sufficient justification for greater procedural protection," because "[a]ll forms of sentencing require the court to consider new evidence." *State v. Tuttle*, 460 N.W.2d 157, 160 (S.D. 1990) (emphasis added).

Finally, the majority's misinterpretation of Minn. R. Evid. 1101(b) results in unreasonable consequences for parties, victims, and district courts. Parties and district courts will be forced to stretch their resources even thinner to accommodate restitution trials. And victims who have often endured traumatic violence at the hands of the defendant will be required to face their aggressors to testify, not only at trial, but again at a restitution trial.

Most absurdly, courts will be forced to waste additional time determining to which sentencing proceedings the Rules of Evidence apply, an exercise that will often prove confusing in practice. If restitution is argued at the same hearing during which the rest of the defendant's sentence is determined,[3] the court must distinguish among arguments that require the application of the Rules of Evidence and those that do not—within the space of a single proceeding.[4] And although the Rules of Evidence now clearly apply to restitution hearings requested by the defendant under section 611A.045, subdivision 3, it is less clear whether they also apply to a restitution hearing that a court orders for its own scheduling or information-gathering purposes. This confusion cannot be what the drafters intended.

In sum, the plain language of Minn. R. Evid. 1101(b) excludes restitution hearings, as part of "sentencing," from the scope of the Minnesota Rules of Evidence. I therefore respectfully dissent from the decision of the majority holding otherwise.

---

**3.** Although section 611A.045, subdivision 3(b) requires a defendant to submit a written request for a restitution hearing, subdivision 3(a) contemplates that challenges to restitution may take place during the sentencing hearing. *See* Minn. Stat. § 611A.045, subd. 3(a) ("At the sentencing, dispositional hearing, or hearing on the restitution request, the offender shall have the burden to produce evidence if the offender intends to challenge the amount of restitution. . . ."); *see also* Minn. Stat. § 611A.04, subd. 1(a) (2016) ("At the sentencing or dispositional hearing, the court shall give the offender an opportunity to

respond to specific items of restitution and their dollar amounts in accordance with the procedures established in section 611A.045, subdivision 3.")

**4.** Indeed, courts must even determine which *restitution* arguments require application of the Rules of Evidence. *See Gaiovnik*, 794 N.W.2d at 646-49 (holding that section 611A.045, subdivision 3 only governs challenges to the "amount or type of restitution," and not to related challenges such as the court's authority to order restitution).