**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0163**

State of Minnesota,
Respondent,

vs.

Michael Lee Vick,
Appellant.

**Filed October 13, 2025
Reversed and remanded
Wheelock, Judge**

Clay County District Court
File No. 14-CR-23-3898

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Caitlin Rose Hurlock, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Patrick Monnens, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Frisch, Chief Judge; and Halbrooks, Judge.[*]

**SYLLABUS**

When the state relies on a business record to establish the amount and items of restitution, Minn. R. Evid. 1101(c) allows the state to establish foundation for the record under Minn. R. Evid. 803(6) by showing, through testimony, affidavit, or proper attestation

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

of the record custodian or other qualified witness, that (1) the records were kept in the course of a regularly conducted business activity, (2) it was a regular practice of the business to make the records, and (3) the records were made at or near the time by or based on information from a person with knowledge of the material recorded therein.

## OPINION

**WHEELOCK**, Judge

Appellant challenges the district court's restitution order, arguing that the district court abused its discretion by (1) admitting inadmissible hearsay evidence pursuant to Minnesota Rule of Evidence 803(6) because the state failed to establish adequate foundation for those records and (2) determining that the state met its burden to establish the type and amount of loss directly resulting from appellant's offense of conviction. We reverse and remand with instructions for the district court to vacate its restitution order.

## FACTS

In November 2023, after being arrested for driving while intoxicated (DWI), appellant Michael Lee Vick assaulted and temporarily blinded a staff member of the Clay County detoxification (detox) center. Respondent State of Minnesota charged Vick with five offenses, including one count of third-degree assault pursuant to Minn. Stat. § 609.223, subd. 1 (2022), for assaulting the staff member. Vick pleaded guilty to third-degree assault and two other charges that are not at issue on appeal and agreed to pay an unspecified amount of restitution that would be determined after the plea hearing.

2

At the plea hearing, Vick agreed to the following as the factual basis for his *Norgaard* plea.[1] Officers arrested Vick on November 7, 2023, for a DWI and transported him to the Clay County detox center in Moorhead. While at the detox center, Vick became agitated, and a nurse picked up a phone and called 911. Vick said, "B-tch, you calling 911. I'll kill you," and then "ripped the phone out of her hand." Vick then attacked a different staff member, hitting that person with a closed fist multiple times and injuring the staff member's teeth, eyes, and face. The staff member later reported that the assault had temporarily blinded him. The district court deferred acceptance of the plea until sentencing and ordered a presentence investigation (PSI).

One day prior to the April 2024 sentencing hearing, the state filed a signed "Affidavit for Restitution" along with a cover letter from the affiant, who was identified as a "WC [Workers' Compensation] Claims Representative" for Minnesota Counties Intergovernmental Trust (MCIT). MCIT is a joint risk-sharing pool that provides workers' compensation coverage for employer Clay County. Under penalty of perjury, the affiant averred that the defendant caused personal injuries to a county employee for which MCIT had paid the amount of $35,092.92 in costs including medical expenses and lost wages.

---

[1] In a *Norgaard* plea,

> [a] defendant may . . . plead guilty even though he or she claims a loss of memory, through amnesia or intoxication, regarding the circumstances of the offense. In such cases, the record must establish that the evidence against the defendant is sufficient to persuade the defendant and his or her counsel that the defendant is guilty or likely to be convicted of the crime charged.

*State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994) (citing *State ex rel. Norgaard v. Tahash*, 110 N.W.2d 867 (Minn. 1961)).

The one-page cover letter enclosing the affidavit identified a staff member of the detox center as the Clay County employee for whom MCIT was paying claims "as a result of the work related assault caused by the above named defendant." The letter also identified Vick as the "above named defendant." While both the letter and the affidavit stated that additional documentation was attached to support the expenses set forth in the affidavit, the record does not reflect that any such attachments or enclosures were actually filed at that time.

At the sentencing hearing, the district court explained the procedure by which it would determine restitution. The state informed the district court that the victims were incurring ongoing losses and that the state hoped to get accurate loss totals for the restitution request; the state requested that the district court "leave restitution open for an additional sixty days in order for the State to try to get a final total on everything." Vick did not object to the extension and requested that a restitution hearing be scheduled following the 60-day window. The district court sentenced Vick, ordered that restitution be left open "for at least sixty days for the State to file their final information as it relates to restitution," and set a restitution hearing for July 15, 2024.

Vick then filed a notice of motion and motion to challenge restitution with the district court and later filed his affidavit pursuant to Minn. Stat. § 611A.045, subd. 3(a) (2024), in which he asserted that the $35,092.92 restitution award requested by the state was excessive in light of his weekly income of $97 plus $297 in food stamps. He requested that the district court consider his ability to pay restitution based on his financial situation

4

and argued that the $9,098.44 listed in the state's affidavit as "other expenses" was too vague and unsupported by documentation to justify awarding it as restitution.

On July 15, 2024, the district court held the restitution hearing. Thirty minutes before the hearing began, the state filed an updated affidavit that requested restitution in the amount of $44,687.81 and attached four pages of spreadsheets. Although July 15 was well past the 60-day window, the state offered the updated affidavit during the hearing to provide "foundation for admission of documentary evidence offered under Rule 803(6) . . . in lieu of testimony" pursuant to Minn. R. Evid. 1101(c).[2] The state acknowledged that, because it had not filed the updated affidavit within 60 days as directed by the district court, it was limited to the amount that it requested in its April 2024 affidavit, which was $35,092.92.

The updated affidavit was nearly identical to the April 2024 affidavit, except that the updated affidavit noted that "[t]reatment and expenses are ongoing as injured worker continues to treat" and listed the updated losses. The affiant averred:

> The defendant caused personal injuries to an employee of the County; MCIT paid for the expenses of the injured employee. The expenses were incurred as a result of personal injury suffered by County's injured employee because of defendant's actions. The losses incurred include but are not limited to expenses related to medical bills, lost wages, transportation, rehabilitation if related, etc.
>
> These losses are as follows:
>
> 1. Lost Wages (from 11/08/24 to 02/29/24)   $12,885.92
> 2. Medical Expenses   $20,987.75
> 3. Rehabilitation services   $8,980.90

---

[2] The state never sought to admit the April 2024 affidavit into evidence.

| 4. Bill expense | $1,833.24 |
| Total | $44,687.81 |

The updated affidavit stated that it attached "a payment listing from the workers' compensation claim file as documentation of the expenses incurred to date" and included four pages of spreadsheets. Although the spreadsheet pages followed the same format—showing a table of information—they were not identical or self-explanatory. Each page had a different "Financial Type" and "Financial Bucket" number and different labeled columns. The sum total on each page appears to correspond to a category of loss enumerated in the affidavit.

Vick objected to admission of the updated affidavit and spreadsheets on hearsay and improper foundation grounds, arguing that the updated affidavit did not establish that the spreadsheets are "a regularly kept business record" and "[t]here's no ability to cross-examine about why these were paid, any questions as to the payment premiums, anything of that nature." The state argued that the foundational requirements were met because the updated affidavit included a statement indicating that the affiant signed it under penalty of perjury in compliance with Minn. Stat. § 358.116 (2024).

The district court agreed that some of the statements in the affidavit were not admissible under Minn. R. Evid. 803(6), including the statement that "the defendant caused personal injuries to an employee of the County and MCIT paid for the expenses, and the expenses were incurred as a result of personal injury suffered by County's injured employees because of defendant's actions." The district court stated it was "not [going to]

6

accept that affidavit for those statements that that is the injuries that were caused in this case." The district court received the updated affidavit and the spreadsheets into evidence.

Vick testified that he was not then employed and had not been employed for approximately the previous eight months because of recent medical problems. He stated that he was receiving public assistance for housing, medical, and food expenses and that his monthly expenses included $320 for rent, $150 for utilities, and an unspecified amount for his phone and auto insurance. Vick also requested that the court review the PSI report when considering his ability to pay restitution.

In October 2024, the district court denied Vick's motion challenging restitution and ordered him to pay $35,092.92 in restitution to MCIT.

Vick appeals.

## ISSUES

I.  Did the district court abuse its discretion when it determined that the state established adequate foundation for spreadsheets it submitted under Minn. R. Evid. 803(6), the business-records exception to the hearsay rule?

II. Did the district court abuse its discretion by ordering restitution based on insufficient evidence?

## ANALYSIS

An offender may challenge a restitution order by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested or within 30 days of sentencing, whichever is later. Minn. Stat. § 611A.045, subd. 3(b) (2024). An offender challenging the amount of restitution, specific items of restitution, or their dollar

amounts has the burden to produce evidence at the sentencing, dispositional hearing, or hearing on the restitution request. *Id.*, subd. 3(a). If the offender meets their burden of production, then the state has the burden to demonstrate by a preponderance of the evidence the appropriateness of a particular type of restitution and/or the amount of loss sustained by the victim because of the offense. *Id.*; *State v. Seeman*, ___ N.W.3d ___, ___, 2025 WL 2714048, at *3-4 (Minn. Sept. 24, 2025).

In *State v. Willis*, 898 N.W.2d 642, 648 (Minn. 2017), the supreme court held that the Minnesota Rules of Evidence apply to restitution hearings, and subsequently, the Minnesota Supreme Court Advisory Committees on Evidence and Criminal Procedure amended Minn. R. Evid. 1101(c) to adopt the holding in *Willis* that the rules of evidence apply to restitution hearings, *Order Promulgating Amendment to the Minnesota Rules of Evidence*, No. ADM10-8047 (Apr. 30, 2019). In addition, the committee amended rule 1101(c) to allow the foundation requirement for evidence offered under the business-records hearsay exception—rule 803(6)—to be established by affidavit or statements signed under penalty of perjury pursuant to Minnesota Statutes section 358.116 (attestations) in lieu of testimony. *Id.* This amendment was "intended to ease the burden on victims presenting receipts for expenses, while also ensuring fair and accurate restitution awards." Minn. R. Evid. 1101 2019 comm. cmt.

Whether the same foundation requirements that apply to witness testimony in support of evidence offered pursuant to rule 803(6) also apply to an affidavit or attestation in lieu of witness testimony is a matter of first impression in this court. For the reasons below, we hold that the foundation requirements are the same.

8

**I.** **The district court abused its discretion by admitting hearsay evidence at a restitution hearing because the supporting affidavit did not provide adequate foundation for the admission of the evidence under Minn. R. Evid. 803(6), the business-records exception to the hearsay rule.**

To address Vick's evidentiary argument, we must first consider whether the same foundation requirements that apply to witness testimony in support of evidence offered pursuant to rule 803(6) also apply to an affidavit or attestation offered in lieu of witness testimony pursuant to rule 1101(c). We then assess whether the state complied with the foundation requirements for admission as business records of the spreadsheets it submitted to substantiate its restitution request.

> **A.** **An affidavit offered pursuant to rule 1101(c) to lay foundation for the admission of evidence as a business record under rule 803(6) must comply with the same foundation requirements as witness testimony provided pursuant to rule 803(6).**

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is inadmissible "except as provided by [the Minnesota Rules of Evidence]." Minn. R. Evid. 802. One exception to the general inadmissibility of hearsay evidence is the business-records exception, which provides that a "memorandum, report, record, or data compilation" is "not excluded by the hearsay rule" if it is

> made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness[.]

Minn. R. Evid. 803(6).

The supreme court has interpreted rule 803(6) to impose foundational requirements for evidence to qualify as a business record excepted from the hearsay rule. *Nat'l Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn. 1983). First, the records must have been kept in the course of a regularly conducted business activity. *Id.* Second, it must be the regular business practice to create the records. *Id.* And third, a record custodian or other qualified witness must testify to show that the first two requirements are met. *Id.*[3]

As amended after *Willis*, rule 1101(c) provides that, "[f]or restitution hearings held under Minn. Stat. § 611A.045, subd. 3(b), these rules apply except that the foundation for admission of documentary evidence offered under Rule 803(6) may be provided by affidavit, or statements signed under penalty of perjury pursuant to Minnesota Statutes, section 358.116, in lieu of testimony." Minn. R. Evid. 1101(c).

The parties' dispute in interpreting rule 1101(c) centers on whether the contents of the affidavit or attestation must provide "the foundation for admission of documentary evidence offered under Rule 803(6)" required of in-person testimony or whether merely providing an "affidavit, or statements signed under penalty of perjury" satisfies the foundation requirement for admission of documentary evidence regardless of the contents of the affidavit or statement. Vick contends that affidavits or attestations under rule 1101(c) are equivalent to the testimony of a record custodian or qualified witness

---

[3] Vick also argues that the spreadsheets were compiled for purposes of litigation and thus did not qualify as business records on that basis. *See* Minn R. Evid. 803(6) ("A memorandum, report, record, or data compilation prepared for litigation is not admissible under [the business-records] exception."). Like Vick, we analyze whether the affidavit provided adequate foundation because the record lacks evidence as to the circumstances of the spreadsheets' creation.

under rule 803(6) and that, therefore, the affidavits or attestations must meet the requirements set forth in rule 803(6) to establish foundation for the records attached to them. The state appears to argue that, so long as the affidavits or attestations are sworn or signed under the penalty of perjury in compliance with Minn. Stat. § 358.116, those affidavits or attestations have satisfied the foundation requirements under rule 1101(c) for business records, even if none of the requirements set forth in rule 803(6) is met. To resolve this dispute, we must interpret and apply the rules of evidence.

Appellate courts "review the interpretation and application of the rules of evidence de novo." *State v. Sanchez-Sanchez*, 879 N.W.2d 324, 329 (Minn. 2016). When interpreting the Minnesota Rules of Evidence, "we first look at the plain language of the rule." *Willis*, 898 N.W.2d at 645. We construe words and phrases "according to the rules of grammar and their common and approved usage." *Id.* We must apply the plain language of a rule if it is unambiguous and will look beyond the plain language of the rule only if the rule is subject to more than one reasonable interpretation. *Id.* We apply the same interpretive canons to the rules as we do statutes. *State v. Tomlinson*, 938 N.W.2d 279, 285 (Minn. App. 2019). We "avoid interpretations that would render a word or phrase superfluous, void, or insignificant [to ensure] each word in a statute is given effect." *State v. Galvan-Contreras*, 980 N.W.2d 578, 585 (Minn. 2022) (quotation omitted).

Turning to the language of rule 1101(c), the first clause of this single-sentence rule establishes important context for its interpretation: "[f]or restitution hearings . . . , these rules [of evidence] apply." Minn. R. Evid. 1101(c). The baseline is that the rules of evidence apply in restitution hearings as they do in "all actions and proceedings in the

11

courts of this state." Minn. R. Evid. 1101(a). The words "except that" signal an exception from the baseline for "the foundation for admission of documentary evidence offered under Rule 803(6)."

As a reminder, Minn. R. Evid. 803(6) provides that a "memorandum, report, record, or data compilation" is "not excluded by the hearsay rule" if it is

> made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*[.]

It is reasonable to interpret the exception from this baseline in rule 803(6) that is set forth in rule 1101(c) as a different *means* by which the foundation "may be provided," as Vick argues.

The last prepositional phrase in both rules begins with "by," which means "through or through the medium of," *Merriam-Webster's Collegiate Dictionary* 170 (11th ed. 2014), and "indicat[es] the means of achieving something," *Oxford Dictionary of English* 240 (3d ed. 2010), and in rule 1101(c), it has as its object the nouns "affidavit, or statements signed under penalty of perjury," indicating that the affidavit or statement is the medium or means of providing the foundation. But the prepositional phrase in rule 1101(c) does not stop there. It continues with a nested prepositional phrase beginning with "in lieu of," which means "in the place of; instead of," *Merriam-Webster's*, *supra*, at 718, and has "testimony" as its object.

12

If we read the exception in rule 1101(c) as providing the means of "affidavit, or statements signed under penalty of perjury" in the place of the means of "testimony" in rule 803(6), that rule would provide that a "memorandum, report, record, or data compilation" is "not excluded by the hearsay rule" if it is

> made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by [affidavit, or statements signed under penalty of perjury] of the custodian or other qualified witness*[.]

It is reasonable to read the exception in rule 1101(c) as permitting the means of "by affidavit, or statement signed under the penalty of perjury" to be used in place of the means of "by testimony" in rule 803(6), with no change to rule 803(6)'s substantive requirements for the foundation.

Moreover, if we are to give meaning to all of the words in rule 1101(c) as we must, it is unreasonable to read the exception as substituting "affidavit, or statement signed under the penalty of perjury" for the description of the substantive requirements for the foundation in rule 803(6), as the state argues, instead of for "testimony" as the means of providing the foundation. To do so would ignore the context of the words "by affidavit, or statement signed under penalty of perjury" in rule 1101(c)—they appear as the object of a prepositional phrase indicating that they are a means—and "in lieu of testimony" indicates that they are in place of "testimony," not of "foundation" in rule 1101(c). It is not reasonable to infer from a rule modifying only the required *means* of providing the foundation for admission of evidence as a business record that the legislature intended to

significantly alter the *substantive* requirements for that foundation. Thus, we cannot conclude that the state's proposed reading of rule 1101(c) is reasonable. Absent any reasonable alternative interpretation, we conclude that rule 1101(c) is unambiguous and interpret it based on the plain meaning of the rule's language.

Even if the state's interpretation were reasonable and the language of rule 1101(c) were ambiguous, we would still conclude that rule 1101(c) does not change the substantive foundation requirements of rule 803(6). *See State v. Plancarte*, 20 N.W.3d 30, 38 (Minn. 2025) (stating that, "[w]hen a statute is ambiguous, we may consider additional canons of construction to ascertain the intention of the Legislature," including "the object to be attained" (quotations omitted)). The 2019 committee comments to rule 1101(c) further support our interpretation of the rule. The comments state that permitting foundation for the admission of evidence as a business record to be established by affidavits or attestations in lieu of witness testimony "is intended to ease the burden on victims presenting receipts for expenses, while also ensuring fair and accurate restitution awards." Minn. R. Evid. 1101 2019 comm. cmt. Rule 1101(c) facilitates restitution awards for victims because the state can meet its burden of production for restitution requests without requiring record custodians and other qualified witnesses to appear in person in court to establish the foundation necessary to have relevant evidence supporting the restitution request admitted into evidence. At the same time, requiring that rule 1101(c) affidavits or attestations meet the same foundation requirements in rule 803(6) for the admission of evidence as a business record ensures that restitution awards are fair and accurate because

14

the award will be supported by statements sworn by an individual with personal knowledge of the origin and reliability of the evidence supporting the award.

We thus hold that, when the state relies on a business record to establish the amount and items of restitution, Minn. R. Evid. 1101(c) allows the state to establish foundation for the record under Minn. R. Evid. 803(6) by showing, through testimony, affidavit, or proper attestation of the record custodian or other qualified witness, that (1) the records were kept in the course of a regularly conducted business activity, (2) it was a regular practice of the business to make the records, and (3) the records were made at or near the time by or based on information from a person with knowledge of the material recorded therein.

**B.** **Because the affidavit failed to meet the requirements of rule 803(6), the district court abused its discretion by determining that the state established the foundation necessary to admit the spreadsheets.**

We review evidentiary rulings for an abuse of discretion. *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Guzman*, 892 N.W.2d 801, 810 (Minn. 2017). Applying the plain language of rule 1101(c) and rule 803(6), we assess whether the affidavit the state submitted at the restitution hearing shows that it was the regular business practice to make the spreadsheets, that the spreadsheets were kept in the course of a regularly conducted business activity, that the records were made at or near the time of the information recorded by or based on information from a person with knowledge, and that the affidavit is from a record custodian or other qualified witness. *See Nat'l Tea Co.*, 339 N.W.2d at 61.

First, the updated affidavit does not address whether the spreadsheets or the data therein were "kept in the course of a regularly conducted business activity." *Cf. id.* Second, the updated affidavit also does not address whether it was MCIT's regular business practice to make the spreadsheets. *Cf. id.* Third, the updated affidavit does not state that the records were made at or near the time by or based on information from a person with knowledge of the entries recorded. *Cf. id.* Finally, the affidavit does not contain any statement showing that the affiant is a custodian of the spreadsheets or the data therein or is a qualified witness pursuant to rule 803(6). Indeed, the updated affidavit is devoid of any representation that the requirements to establish foundation for admission of the spreadsheets were met.

Because the state offered the spreadsheets as business records as an exception to the prohibition on hearsay, the state was required to establish foundation for the spreadsheets *either* through live testimony *or* through an affidavit or attestation of a record custodian or qualified witness who could establish that MCIT kept the spreadsheets in the regular course of its business activity, that it was the MCIT's regular practice to make the spreadsheets, and that the spreadsheets were made at or near the time of the information recorded by or based on information from someone with knowledge of that information. Because the state did not establish foundation for the spreadsheets, they were hearsay evidence not subject to any exception and the district court abused its discretion when it admitted the spreadsheets as business-records evidence.

16

**II. The district court abused its discretion when it awarded restitution based on insufficient evidence in the record.**

Vick next argues that the district court abused its discretion by awarding restitution because there was no evidence linking the losses incurred by MCIT to the injuries Vick inflicted on the Clay County staff member and that, if the spreadsheets are not admissible as business records, then there is no evidence to substantiate either the type or the amount of losses that could have directly resulted from Vick's assault. The district court determined that MCIT's requested restitution was appropriate. The district court noted that the state filed the April 2024 affidavit for restitution that requested $35,092.92 in total restitution and also that the state later submitted an updated affidavit that included an itemized list of expenses.[4] The district court determined that the state established actual economic loss to support a restitution award, as required by Minn. Stat. § 611A.04, subd. 1(a), because the spreadsheets "provide[] the transaction date, a description, a date range for the services provided, and a payment amount."

But, as we explained above, the spreadsheets were not admissible under the business-records exception to the hearsay rule and the district court erred by admitting

_____

[4] We observe that the updated affidavit was submitted 30 minutes before the restitution hearing began and thus appears not to comply with Minn. Stat. § 611A.04, subd. 1(a) (2024), which states that "all information regarding restitution must be received by the court administrator of the appropriate court at least three business days before the . . . hearing" in order to be considered at the hearing. We also observe that—as the state conceded at oral argument—the appropriate course of action for the state at the restitution hearing, given that the "evidence submitted by the victim [was] not received in time," would have been to request that the district court continue the restitution hearing. Minn. Stat. § 611A.04, subd. 1(a). Because Vick did not raise this argument on appeal, we do not address it here, but we note that parties must comply with, and the district court must enforce, the procedural requirements of sections 611A.04 and 611A.045.

17

them. Without the spreadsheets, there was no evidence in the record that established any losses or a causal nexus between Vick's offense and the alleged losses MCIT incurred on behalf of the Clay County staff member. Absent any evidence of losses, the district court had no basis on which to find that the prosecution had demonstrated either the amount or the appropriateness of MCIT's losses by a preponderance of the evidence or a relationship between the losses it asserted and Vick's offense, and it abused its discretion when it did so.[5] The rules of evidence require, whether by witness or by affidavit or proper attestation, that the proffering party must provide evidence that establishes foundation for the admission of business records they seek to offer at a restitution hearing. Minn. R. Evid. 803(6), 1101(c). Here, the state had the burden of demonstrating the amount and propriety of each particular item of restitution, but its updated affidavit did not establish foundation for the admission of the evidence it sought to rely on to do so. The state's failure to meet its burden requires reversal of the restitution award without an opportunity for the state to provide additional evidence or testimony. *State v. Grayson*, 546 N.W.2d 731, 739 (Minn. 1996) (holding that, in the absence of evidence documenting the victim's loss, a restitution award must be reversed).[6]

---

[5] Vick also correctly asserts that the district court excluded all statements in the updated affidavit that addressed causation, and therefore, Vick argues, there would have been no evidence in the record that could demonstrate a causal connection between Vick's offense and the losses MCIT incurred, even if the spreadsheets were admissible pursuant to rule 803(6). At oral argument, the state conceded that it failed to provide admissible evidence of causation. We need not consider this argument because we conclude that the spreadsheets were not admissible.

[6] Because Vick submitted his affidavit challenging the state's requested restitution over two months before the restitution hearing, the state had more than adequate notice to

We therefore reverse the district court's restitution order and remand to the district court for it to vacate its restitution award.

## DECISION

Although hearsay is generally inadmissible, the Minnesota Rules of Evidence permit the admission of business records as an exception to the hearsay prohibition if certain requirements are met: the records were kept in the course of a regularly conducted business activity; it was a regular practice of the business activity to make the records; the records were made at or near the time of the information recorded therein by or based on a person with knowledge; and these foundation requirements are established by either a record custodian or qualified witness. Minn. R. Evid. 802, 803(6); *see Nat'l Tea Co.*, 339 N.W.2d at 61. At restitution hearings held pursuant to Minn. Stat. § 611A.045, subd. 3(b), the proffering party may establish foundation for the admission of evidence as a business record through the testimony of the record custodian or a qualified witness, or by submitting an affidavit or proper attestation of the record custodian or a qualified witness in lieu of in-person testimony. Minn. R. Evid. 1101(c). Whether by witness, affidavit, or proper attestation, the proffering party must provide evidence that establishes the foundational requirements for application of the business-records exception. The state's updated affidavit did not establish foundation for admission of the spreadsheets;

___

provide sufficient evidence to meet its burden to prove the appropriate type and amount of restitution by a preponderance of the evidence. The only evidence the state chose to submit was the spreadsheets, and we decline the state's invitation at oral argument to remand for further proceedings "to allow the state to properly provide the causal connection between the request for restitution and the defendant's actions and to fulfill the obligations provided by the rules for restitution hearings."

19

therefore, the district court should not have admitted or considered them. Because the district court should not have admitted the spreadsheets as business records, and because the record contains no other evidence in support of the restitution request, the district court abused its discretion by ordering Vick to pay restitution. We reverse the order of the district court and remand with instructions to the district court to vacate its restitution order.

**Reversed and remanded.**